WALTER H. McCAIN, ET AL., Appellants, v. THE CITY OF DES MOINES, ET. AL., Appellees.

| | |
|---|---|
| 128 | 331 |
| 134 | 112 |
| 128 | 331 |
| 138 | 84 |
| 128 | 331 |
| 144 | 630 |
| 144 | 631 |

**Public improvement:** ACCEPTANCE: SPECIAL ASSESSMENTS: INJUNCTION. A board of public works is authorized by Code section 870, to approve and accept of a public improvement, when the work has been done in substantial compliance with the contract and the acceptance is in good faith; but if there has been a substantial departure from the contract, a property owner may enjoin the levy and collection of an assessment therefor, especially where he objected to the work as it progressed.

**Legalizing act:** PREAMBLE. Where the enacting clause of a legalizing act is clear and unambiguous, and the object of the law is manifest, and erroneous recital in the preamble will not invalidate the act.

**Paving contract:** GRADING. A paving contract requiring the removal of the old pavement to a depth sufficient to put down the new one, and for filling where necessary to form the subgrade, only contemplates such grading as may be necessary for the new pavement.

**Cities:** ANNEXATION ACT: COLLATERAL ATTACK. Chapter One, Acts Twenty-second General Assembly, authorizing the City of Des Moines to annex additional territory is constitutional, but if it were invalid it would not ordinarily be subject to collateral attack.

*Appeal from Polk District Court.*— HON. A. H. McVEY, Judge.

Tuesday, June 13, 1905.

Suit in equity to enjoin defendants from levying and collecting special assessments against plaintiff's property for the paving of a street known as "West Grand Avenue," in the city of Des Moines. There was a trial to the court, resulting in a decree dismissing plaintiffs' petition, and they appeal.— *Reversed.*

*Myerly & Myerly,* and *E. H. McVey,* for appellants.

*Carr, Hewitt, Parker & Wright,* for Des Moines Brick Mfg. Co.

*W. H. Bremner,* for appellee City of Des Moines.

Deemer, J.— In the year 1893 the defendant city entered into a contract with the Des Moines Brick Manufacturing Company for the paving of West Grand avenue, in the city of Des Moines, from Twenty-Eighth street west to a point west of what is known as "Park Lane." Plaintiffs are the owners of property abutting upon the street above described. No work was performed under the contract until September of the year 1897, when the manufacturing company began the performance of the contract for the improvement, and turned the same over to the city, as a completed job, some time in the spring of the year 1898. The board of public works accepted the work as being in accord with the contract, and had given notice of the proposed assessment therefor against abutting property when this action was commenced to enjoin the levy thereof.

The main contention in the case is that the work was not completed in accord with the terms of the contract, and that the acceptance thereof by the city officials is not binding upon the property owners. Incidentally it is contended that the contract under which the work was done was and is

invalid, because the publication of notice for bids was not such as was required by law, for the reason that the contract included grading as well as paving, and that the street upon which the improvement was made is not in the city of Des Moines, for the reason that the annexation act of March 13, 1890 (Acts 23d General Assembly, page 3, chapter 1), is unconstitutional and void. Before going to the main contention, we shall dispose of these incidental ones.

The notice in this case was similar to the one given in *Windsor v. City of Des Moines,* 101 Iowa, 343, and consequently was insufficient; but the Legislature, by an act passed April 10, 1894, expressly legalized this contract. See Acts 25th General Assembly, page 167, chapter 179. This act expressly legalized the contract in question, and in the case above cited this legalizing act was sustained. Some of the parties to this suit were parties to that. But even if this were not true, the decision in that case is *stare decisis,* and we see no reason for changing the rule there announced. Claim is made, however, that as the preamble to that act recites that a portion of the work provided for in the contracts named therein had been done, which was in fact untrue, the act is invalid. True, no work had at that time been done under this particular contract, but that feature is not controlling. The legislation is valid, no matter whether work was done under the contract or not. Where the enacting clause is clear and unambiguous, there is no occasion to resort to the preamble. The manifest object of the act was to validate this particular contract, and the mistake in the preamble is not controlling. *State v. Ohio Co.,* 150 Ind. Sup. 21 (49 N. E. Rep. 813, 47 L. R. A. 627), and cases cited. In *Cedar Rapids, etc., v. City,* 118 Iowa, 234, a legalizing act was held invalid because it did not have general application. In that case a general law could have been made applicable, and therefore the act under consideration there was held invalid. In the present case it

*2. Legalizing act: preamble.*

is manifest that a general law could not have been made applicable; hence the Cedar Rapids Case is not in point. Appellant's attack upon the legalizing act is without merit.

II.  The contract provided with reference to the grading that the contractor should remove the ground or old pavement to such a depth as was necessary to make room

3. Paving
   contract:
   grading.

for the pavement to be put down, and should also do such filling as was necessary to form the subgrade for the pavement.  This did not contemplate any expenses for grading save such as were necessary to make room for the new pavement.  Nothing but subgrading was contemplated, and nothing more than this was done.

III.  The pavement in question is in a part of the city of Des Moines which was at one time a small, incorporated town, known as " Greenwood Park."  By act of

4. Cities: annex-
   ation act;
   collateral
   attack.

the Legislature of March 13, 1890, the city of Des Moines was authorized to annex additional territory.  This it did by taking in some surrounding municipalities, including Greenwood Park.  This enactment is challenged as being unconstitutional.  A similar attack was made upon the act several years ago without result.  See *State v. City,* 96 Iowa, 521. That case practically settles this question.  Some of the arguments used in that opinion are perhaps questionable, but the result is undoubtedly correct.  The rule has been reaffirmed in *Newlon v. Ind. Dist.,* 109 Iowa, 175.  This action is clearly a collateral attack upon the annexation act, and, as a general rule, such attacks are impotent.  *McCain v. City,* 174 U. S. 169 (19 Sup. Ct. 644, 43 L. Ed. 936); *Speer v. Board,* 88 Fed. 749 (32 C. C. A. 101); *Schriber v. Langlade,* 66 Wis. 616 (29 N. W. Rep. 547, 554); *Powell v. Greensburg,* 150 Ind. 148 (49 N. E. Rep. 955). Moreover the annexation act and the proceedings thereunder were legalized in the year 1894.  See chapter 12, page 28, Acts 25th General Assembly.  This legalizing act

is not challenged, and it settles the question as to the validity of the annexation proceedings.

IV.   Coming now to the main contention, that the improvement was not made in accord with the terms of the contract, we find that there was noncompliance therewith in

1. Public improvement: acceptance; special assessments; injunction.

many particulars, to some of which we shall presently refer.   But defendants insist that, as the work was accepted by the board of public works, this acceptance is conclusive, in the absence of fraud or bad faith.   Section 870 of the Code, in force when the acceptance was made, provides, in substance, that the board of public works "shall accept any work done or improvement made when completed according to contract." On the one hand it is insisted that acceptance by this board is *prima facie* only of the completion of the work according to the terms of the contract, and that, if there have been any substantial departures from the terms thereof, the acceptance is not binding upon the property owners, while on the other it is contended that acceptance is binding and conclusive in the absence of fraud or mistake.   There is a very decided conflict in the authorities on this proposition. See Elliott on Roads & Streets (2d Ed.), section 586, and cases cited.   Without deciding this question, we have held that there may be a legal as well as an actual fraud.   See *Mason v. City,* 108 Iowa, 658, following *Carthan v. Lang,* 69 Iowa, 384.   As said in the Carthan Case, while there may not be evidence of actual fraud, yet, through inattention, neglect of duty, or otherwise, the person or body authorized to accept may be guilty of such conduct as to amount to legal fraud.   Of course, a mere error of judgment, unless very gross, will not amount to a fraud.   But acceptance where there have been substantial departures from the terms and requirements of the contract may well be regarded as fraudulent.   The rule which seems to be acceptable to appellees, which they quote from Judge Cooley's work on Taxation, is as follows:   "In general, no

defense to an assessment, that the contract for work has not been performed according to its terms, is allowed, but this doctrine must be confined within the proper limits. It cannot be extended to cover a case in which the authorities, after contracting for one thing, have seen fit to accept something different in its place, for, if this might be done, the statutory restraint upon the action of local authorities in these cases would be of no more force than they would see fit to allow."

This rule seems to us to be the correct one, especially in view of the statutory provision we have quoted. Whilst this statute provides that the board shall accept the work when completed in accord with the terms of the contract, something must, of course, be left to the judgment of the board authorized to accept; else there is no purpose in having an acceptance at all. But the acceptance must be in good faith, and there must be a substantial compliance with the terms of the contract. Literal compliance is not, of course, required, for something must be left to the judgment of the board. Much depends upon whether or not the improvement, as made, is such as to answer the intended purposes — as to whether or not the work, as done, will affect the usefulness of the improvement — and upon an answer to the question as to whether the departure has been to the prejudice of the property owner. If there have been such substantial departures from the authorized plan of work, such an action as this will lie, especially where, as here, the property owners object to the work as it is being done. It is conceded that there was not full and exact compliance with the terms of the contract in the present case, but there is much dispute as to the extent thereof, and as to the results flowing therefrom. Appellants claim that the contractor departed from the terms of his contract in the following particulars, to-wit: (1) The subgrade was not prepared as required; (2) the sand foundation was not of the depth required; (3) the brick were not of the

size required; and (4) improper construction of the sand layers. Some other defects are complained of, but the principal ones are those already mentioned.

The contract provided that the subgrade should be thoroughly and repeatedly rolled with a roller having not less than 250 pounds weight per inch face of roller, and that all depressions which should then appear should be filled with sand or gravel as directed, and at places where excavations had been made for sewer, water, and steam pipes, the earth should be thoroughly and compactly rammed, and the inequalities filled with sand and rolled until the whole surface was uniform. It also provided that there should be a bottom course of sand four inches deep over the entire roadbed; the foundation to be wetted and rammed to the satisfaction of the city engineer or board of public works. Upon this course there was to be one inch of good, clean river sand, brought to a proper curvature. Upon this sand course a course of bricks was to be laid flatwise; the same to be rolled to settle them into position. Upon this course of bricks was to be spread a layer of dry, clean river sand, sufficient to fill all joints, and to cover the brick course to the depth of one inch; and upon this foundation was to be placed one course of standard-sized paving bricks, set on edge and close together, breaking joints, etc. These bricks were to be $8\frac{1}{4}$ by 4 by $2\frac{1}{4}$ inches in size, hard-burned, for both top and bottom courses, according to samples submitted by the contractor. After the top course was laid, it was to be swept clean, and the joints were to be filled either with asphalt or concrete preparations.

Appellants say that none of these requirements were complied with, while appellees admit that the roller was not of the required weight, and that the bricks used were not of full size; that is to say, instead of their being full 4 inches in width, they ran from $3\frac{3}{4}$ to 4 inches, depending upon the amount of shrinkage resulting from the burning

thereof. The facts are that this contract was not complied with in the following particulars: The sand foundation, instead of being made of two layers, one of 4 inches, and the other of 1, was of but one layer, sometimes less than 4 inches in depth, and rarely more than that. The first layer was not wetted, and there was no ramming thereof. The subgrade was not rolled as required by the contract, but with a roller less than half the weight called for by the contract. The depressions which appeared after the rolling were not filled with sand or gravel and thoroughly and compactly rammed and rolled. The sand used in the first layer was all ordinary river sand, and clean river sand was not used for the top course. The sand used upon the first course of brick was not dry, clean river sand one inch thick, and sufficient to fill all joints, but was ordinary, wet river sand, which did not fill the interstices and leave the required thickness, and clean river sand was not used for the top course. Indeed, it was full of gravel, pebbles, and more or less loam, and was either wet or had been frozen in places, so that it would not fill the joints until it became dry; and, as a result thereof, there was not enough to fill them and cover the bricks to the depth of one inch. The bricks were, as we have said, undersize; the majority of them being one-quarter of an inch less in width than the contract called for. Each and all of these departures resulted in a saving to the contractor, and undoubtedly affected the lasting qualities of the pavement.

There is a serious dispute as to the condition of the improvement when this case was tried, some four years after the work was done, but that the departures — especially from that part of the contract relating to the foundation — must have seriously affected the lasting qualities of the pavement, seems clear. All the witnesses agree that at the time of the trial in the district court there were depressions and uneven places in the pavement, but they disagree as to the causes thereof. The evidence shows that various of

the property owners made complaints to the city council and to other officers of the city regarding the character of the work, and of the failure of the contractor to perform; but they paid no attention to these protests, and did nothing save to invite a lawsuit. The contractor was also notified by them of some of these departures, but failed to remedy the same. When complaint was made to members of the board of public works that the contractor was not complying with his contract, the response was that they were doing the work as they pleased, and that, if the abutting property owners did not like it, they could go to the courts and get satisfaction. Written notices were also served upon the city, the contractor, and others regarding the departures from the contract, but these were also disregarded. All of these things tend to show such a disregard of official duty and of the rights of the abutting property owners as to evince fraud both on the part of the contractor and of the city officials. All of the departures were to the material advantage of the contractor, in that they lessened the cost of the work. They were, presumptively, at least, of equal disadvantage to the abutting property owners, for we must assume that the various provisions of the contract referred to were for the ultimate benefit of the property owner. The acceptance of the work was not a mere error of judgment on the part of the board of public works, but an arbitrary attempt at exercise of power without reference to the rights of those vitally interested. No one contends that the work was done according to the terms of the contract, but defendants say that, as the results were just as good, plaintiffs may not complain. This surely cannot be the law in this State. The statute gave the board power to accept when " the work is completed according to the terms of the contract," and not otherwise. This clearly recognizes a limitation upon the power of the board. They could not arbitrarily and obstinately refuse to exact performance, and in the end, say that the work was just as good as if they

had insisted upon compliance with the specifications. If they had this power, they might materially prejudice abutting property owners, to the great advantage of the contractor. No such opportunity should be left open for fraud and corruption.

Our conclusions find support in the following among other cases: *Bond v. Newark,* 19 N. J. Eq. 376; *Schumm v. Seymour,* 24 N. J. Eq. 149; *Lake v. Trustees,* 4 Denio, 523; *Pepper v. Phila.,* 114 Pa. 96 (6 Atl. Rep. 899).

While, as we have already said, there is a conflict in authority upon the legal effect of an acceptance of the work by city officials, most of the cases relied upon by appellees were decided under statutes quite different from our own. Statutes there construed gave 'unrestricted power to the accepting body. That the abutting property owners had the right of appeal was given great significance in some of these cases — particularly in those from Illinois. In Michigan there is a statute which makes an acceptance by the city council final and conclusive. There is now a remedy by appeal in this State, but the statute giving it was not in force when this proceeding was instituted.

We have no occasion to consider the question as to whether recovery may be had as upon *quantum meruit,* for that is not in the case as presented by the pleadings.

We are of opinion that the trial court was in error in dismissing the petition, and the judgment is therefore *reversed.*