J. C. BENNETT ET AL., Appellants v. CITY OF EMMETSBURG
ET AL., Appellees.

138    67
c141   73

138    67
144    630

**Municipal corporations:** ACTION TO ENJOIN SPECIAL ASSESSMENT:
1 MOTION TO DISMISS. In an action by several property owners to
enjoin the enforcement of a special assessment for the construction
of a sewer system, the interest of each is separate and distinct from
that of every other, and a dismissal or withdrawal from the case
of a part of the plaintiffs will not conclude the right of the others
to prosecute the action; and where a dismissal as to part of the
appellants because no longer entitled to prosecute the action is not
insisted upon, the appeal will be retained as to all.

**Appeal:** DELAY IN FILING ARGUMENT. Where delay in filing a reply
2 argument is excusable and no prejudice appears it will not be
stricken.

**Construction of sewerage system:** AUTHORITY OF COUNCIL: SUFFI-
3 CIENCY OF RECORD. In the absence of a showing that the work of
constructing a sewerage system was ordered by less than a three-
fourths vote of the council, a recital in the resolution of necessity,
which is a part of the council proceedings, that it was undertaken
on motion of the council is sufficient evidence of that fact to
comply with Code, section 811, without any further record of
authority to proceed.

**Same:** YEA AND NAY VOTE: RECORD. The statute providing for a
4 yea and nay vote of a city council in ordering the construction of
a sewerage system contemplates a roll call, and a record of each
councilman's vote as his name is called.

**Same:** RESOLUTION OF NECESSITY: NOTICE. Before a city council has
5 jurisdiction to order the construction of lateral sewers, a resolution
of necessity must be adopted setting forth the necessity for the
improvement, with a statement of the material to be used and
method of construction, and notice of a time and place of hearing
must be given that property owners may appear and make objec-
tion.

**Same:** NOTICE TO CONTRACTORS. A notice to contractors inviting
6 bids for the construction of sewers, which fails to give definite
information respecting the conditions under which the work is
to be done and the manner of construction, in substantial con-
formity with the statute, is insufficient to give the council juris-
diction to proceed. A mere estimate of the kind, size and
linear feet of sewer pipe to be used, the number of flush tanks

and man holes, and stating that payment will be made in special certificates, is not a compliance with the statute; even though there is a general reference in the notice to plans and specifications.

**Same.** A notice to contractors of the construction of a sewer which does not define the course of the sewer is not in compliance with the statute.

**Special assessments.** Under the contract for the construction of a sewer as described in an ordinance, an assessment for the purpose of paying for sewerage not so described is void.

**Same.** Where the record discloses no authority to dig a disposal ditch in connection with the construction of a sewer, a special assessment to pay for the same is void.

**Same:** POWER OF COUNCIL. Where the resolution of necessity for the construction of a sewer provides that the cost thereof shall be paid from a tax upon the property included within the assessment district, and from the general fund, the council has no authority to order payment through the medium of a special assessment.

**Same.** Although a resolution of necessity for the construction of a sewer authorizes payment therefor by special assessment, the statute contemplates an assessment upon abutting property only, and an assessment upon nonadjacent property is void.

**Same.** The statutes relating to special assessments to pay the cost of public improvements must be strictly pursued; and an assessment including items and accounts for which a tax could not legally be levied, or for an amount in excess of a legal levy, is void.

**Same:** SPECIAL BENEFITS. The assessment of all lots within a sewer district, irrespective of whether they are adjacent to or abut upon the sewers constructed, is not in compliance with the statute or an ordinance providing that the special assessments shall be in proportion to the benefits; since the question of benefits is dependent upon whether there is an opportunity to utilize the sewer .

**Same:** DEFECTIVE CONSTRUCTION. Where a sewer has been defectively constructed a special assessment to pay its cost should not be levied until the defects have been remedied; and a. lot owner is not bound to accept a defective sewer and pay the full contract price, simply because the city council has made a settlement with the contractor respecting the defects.

**Special assessments:** OBJECTION BY LOT OWNERS: ESTOPPEL. The fact that lot owners knew of the resolution of necessity for the construction of a sewerage system, the letting of the contract and progress of the work, under proceedings contemplating payment therefor in part from the general city fund and in part by a tax

upon the property within the district, and made no objection thereto, will not estop them from objecting to special assessments to pay the cost thereof.

**Same:** VOID ASSESSMENT: EQUITABLE RELIEF. Jurisdictional defects in proceedings to establish a sewerage system and to levy assessments to pay therefor, are not waived by failure of the taxpayers to appear and object to the assessment, or to appeal from the action of the council in ordering the assessment: but they may still have equitable relief from an assessment void for want of jurisdiction.

DEEMER, J., dissenting.

*Appeal from Palo Alto District Court.*— HON. W. B. QUARTON, Judge.

THURSDAY, MARCH 19, 1908.

ACTION in equity to restrain the enforcement of a special assessment, levied to pay the cost of construction of a sewer system in the defendant city. The decree entered was adverse to plaintiffs and they appeal.— *Reversed.*

*Baily & Stipp* and *Davidson & Burt,* for appellants.

*E. A. Morling, W. H. Morling,* and *J. K. Macomber,* for appellees.

BISHOP, J.— In April, 1903, the council of the defendant city approved plans and specifications, drawn by M. Tschirgi, an engineer, for a sewer system for the city; and, as we understand, such plan contemplated a main sewer in two divisions, and with lateral sewers connecting therewith and extending into the various sections of the city — the main sewer to be provided at its general terminus with a disposal plant. Thereafter proceedings under the statute were had, looking to the construction of the system, contracts were let, etc. At the close of the work it was accepted by the city council, and payment therefor was about to be made when this action by plaintiffs — taxpayers of the city — was commenced. Many errors and irregularities in the proceed-

ings and contracts, and negligence and fraud in the performance of the work are charged, and these we shall consider in the order which seems to us best adapted to a disposition of the case. The facts, as far as necessary to be considered, will be stated in the order of their connection.

I. With the case has come to us a motion to dismiss the appeal, and this we may dispose of before going to a discussion of the appeal on merits. The motion is based upon

1. MUNICIPAL CORPORATIONS: action to injoin special assessment: motion to dismiss.

the fact that two of the thirty appellants, since the appeal was taken, have waived their right to further prosecute by securing permission from the city for, and by connecting up their properties with, the sewer, and by presently using the same; and the further fact that another of the appellants has, since the appeal, paid the assessment levied against his property. The motion proceeds upon the assumption that the interests of the plaintiffs and appellants are joint, and hence that a settlement or adjustment with one must be given operation to conclude the others. There is nothing upon which to rest such an assumption. The interest of each lot owner is separate and distinct from that of every other. The plaintiffs are in court together only because the statute authorizes such a course to avoid a multiplicity of suits. And, because in such a case one of the plaintiffs may be dismissed, or shall withdraw from the case, it does not follow that the right of the others to be heard is thereby destroyed. *Russell v. Stansell,* 105 U. S. 303 (26 L. Ed. 989); *Ogden v. Armstrong,* 168 U. S. 234 (18 Sup. Ct. 98, 42 L. Ed. 444); *Todd v. Daniel,* 16 Pet. (U. S.) 541 (10 L. Ed. 1054). We are asked to dismiss the appeal as a whole. The right to a dismissal as to the particular persons is not argued or insisted upon, and we do not therefore express any opinion on that subject. The motion to dismiss is overruled.

We have also a motion to strike the reply argument of appellants because not filed in time. The delay seems to have

been excusable, and, as no prejudice appears, the motion is overruled.

2. Appeal: delay in filing argument.

II.   On June 15, 1903, the city council adopted a resolution of necessity, reciting, among other things, that " it is found necessary by the council in order to preserve the health and meet the demands of the property owners in the

3. Construction of sewerage system: authority of council: sufficiency of record.

Emmetsburg sewer district " that said district be improved by constructing " a main sewer of the best quality of vitrified round sewer pipe with sealed joints, varying in size from twelve to twenty-two inches in diameter, together with disposal plant," etc.   The course of the sewer is then marked out in the several divisions, and the location of the disposal plant stated.   It is then recited that the work shall be done under contract, and in accordance with the plans and specifications adopted, and that " the cost shall be assessed in accordance with the law governing the same against the real property situated and included within the following described boundary lines, and from the general fund of the city." Then follows a designation of several additions and parts of additions to the city, comprising, as we understand, the major portion of the corporate territory, which, it is declared, shall constitute the " Emmetsburg sewer district." The minutes of the same meeting show the following: " Resolved . . . that a sewer system as set forth in the proposed resolution of necessity be and the same is hereby ordered established, and the clerk is hereby instructed and authorized to advertise for bids for the construction of said system.   Carried, 8 votes for."   And here we have the twofold contention for invalidity:   First, that the resolution did not state whether the improvement was petitioned for, or was ordered by the council on its own motion; second, the record does not show that the yeas and nays were called on the resolution ordering the improvement, and recorded. Code, section 793, provides that the construction of a sewer shall not be ordered until three-fourths of all the members

of the council shall by vote assent thereto, unless the same be petitioned for by the abutting owners. And by section 811 it is provided that the vote "shall be by yeas and nays, and entered of record, and the record shall show whether the improvement was petitioned for or made on the motion of the council." We think it sufficiently appears in the resolution of necessity — that being part of the record of the proceedings — that the action was on motion of the council. At least we should be inclined to accept it as sufficient in the absence of proof that the work was ordered by less than a three-fourths vote of the council. And, the fact once stated in the record, it is enough.

Looking now to the second phase of the contention, the record before us makes it appear that the city council consisted of the mayor and eight aldermen; and the minutes 4. SAME: yea of the meeting in question show that the and nay vote: record. mayor and each alderman, naming him, were present. The question then resolves itself down to this: Can it be said that compliance with the requirements of section 811 sufficiently appears from the entry as made in the minute book of the council? We think not. We have said over and over again that the purpose of the statute is to compel a record showing how each individual member of the council, on his name being called, voted. And we have as often declared that it is not for us to say that the requirement is unnecessary or unreasonable. The following are among the later cases: *Water Co. v. Marion,* 121 Iowa, 306; *Cook v. Independence,* 133 Iowa, 582; *Markham v. Anamosa,* 122 Iowa, 689. True, we have on occasion said that, where the recorded minutes show what members of the council were present, and that a roll call was had, a failure on the part of the clerk to rewrite the names, in recording the vote, where all vote one way, would not be fatal. And this because in such a record the prime requirements of the statute are complied with. On reading, one would be advised how the vote was taken, and how each member present voted.

But we are not warranted in further extending the holding. Now, on reading the minutes of the meeting here in question, no one could say how the vote was taken. It may have been by show of hands, or *viva voce*. Whatever the fact as known to those present, it is certain that the minutes of the meeting — and by these we are bound — do not show that the roll was called, and the ayes and noes entered of record.

III.   At the council meeting of June 15th, and following the adoption of the resolution ordering the main sewer, a resolution was made of record as follows: " Whereas petitions for the establishment of lateral sewers (describing the course of three sewers to connect at different points with the main sewer) have been presented to the council, said petitions having been signed by property owners owning a majority of the linear front feet of property abutting on each of said lateral sewers respectively: it is therefore resolved that said lateral sewers be and the same are hereby ordered established and constructed as petitioned for, the same to be constructed in accordance with the plans and specifications heretofore adopted by said council; and the clerk is hereby ordered to advertise for bids for the construction thereof which shall be included in the notice heretofore ordered given." It is said that the action so taken was void for want of jurisdiction. And in this contention we agree. Code, section 810, provides in substance that, before any sewer can be constructed, a proposed resolution of necessity shall be brought forward, which resolution shall set forth the necessity for the improvement; and it shall contain a statement of the material to be used, the method of construction, etc. Notice shall be given of a time fixed for hearing, at which property owners may appear and make objections. Here, as we have seen, the council simply ordered the construction of the sewers, and ordered the clerk to include such in the notice inviting bids for the construction of the main sewer. There is no way in which such action can be justified. The statute is the sole authority to proceed,

5. SAME:
resolution
of necessity:
notice.

and its provisions are mandatory. Accordingly steps taken in open disregard thereof must be condemned as without jurisdiction and void. *Osburn v. Lyons,* 104 Iowa, 160; *Polk v. McCartney,* 104 Iowa, 567; *Gallaher v. Garland,* 126 Iowa, 206; *Comstock v. Eagle Grove,* 133 Iowa, 589.

IV. Next in order, counsel for appellant point out that the notice to contractors, inviting bids for the construction of the main and three lateral sewers, did not comply

**6. SAME:** notice to contractors. with the requirements of the statute, and for this further reason invalidity in the subsequent proceedings is contended for. The notice published was as follows: " Sealed proposals will be received at the office of the city clerk . . . until July 8, 1903, . . . for furnshing material and constructing sewers in said city according to plans and specifications on file in said office. . . . Said sewer to be constructed of vitrified sewer pipe. Payment for above work to be made in special assessment certificates. . . . Estimated amount of work: 3,960 lin. ft. 20 inch; 3,960 lin. ft. 18 inch; 2,640 lin. ft. 12 inch; 5,610 lin. ft. 8 inch; 3 flush tanks; 49 manholes." On this subject, the statute (section 813) provides that the notice to bidders " shall state as nearly as practicable the extent of the work and the kind of material for which bids will be received, when the work shall be done, the terms of payment fixed, and the time when proposals shall be acted upon." This statute is mandatory also, and noncompliance therewith, if made to appear, must result in a denial of jurisdiction. The plain purpose is to avoid favoritism, and to secure the most liberal bidding on works of improvement to be constructed at public expense. We need not review at length the cases in which the subject is discussed. They are within easy reach of all. *Coggeshall v. Des Moines,* 78 Iowa, 235; *Windsor v. Des Moines,* 101 Iowa, 343; *Osburn v. Lyons,* 104 Iowa, 160; *Polk v. McCartney,* 104 Iowa, 567; *Gill v. Patton,* 118 Iowa, 88; *Gallaher*

*v. Garland,* 126 Iowa, 206; *Comstock v. Eagle Grove,* 133 Iowa, 589.

Fairly analyzed, the notice here given imparted no more information than that the city contemplated the construction of a vitrified pipe sewer according to plans and specifications on file. The estimated number of linear feet of four separate sizes of pipe is stated, the number of flush tanks and manholes, and that payment will be made in special-assessment certificates. And it is assailed (a) because it does not state " as nearly as practicable the extent of the work or the kind of materials to be furnished; (b) it does not state when the proposals should be acted upon; (c) it does not state when the work should be done." In our view the expression " extent of the work " means something more than a bare statement of the length of the sewer, the size of the pipe, and the number of the manholes and flush tanks. It includes some definite information respecting the conditions under which the work is to be done, and the manner in which it will be required to be done. Without this information no one could intelligently submit a bid. It is true that the notice refers to plans and specifications. But, even if it could be said that a notice advised contractors where they might go and find out for themselves " the extent of the work," the information furnished by this notice would have been of little, if any value, because as we have seen, the plans and specifications covered practically the whole city. Counsel do not argue this, but we may suggest the thought that possibly the notice should be further charged with infirmity for that it does not correctly state the extent of the work and materials authorized. Presumptively there is included therein the construction of the lateral sewers, a work, as we have seen, unauthorized in any event. Without further discussion, we think it must be said that, within the rule of the cases cited, the notice was insufficient.

V. On October 15, 1903, a further resolution of necessity was adopted by the council, looking to the construction

of additional lateral sewers. Following the adoption of the resolution, the sewers were ordered, and the clerk instructed to advertise for bids. The notice published recited that bids would be received on a day named " for the construction of 1,888 feet of 8-inch sewer, the same to be constructed of vitrified sewer pipe. The contractor must complete the work by February 1, 1904. . . . Payment for the work to be made in sewer certificates." This notice is assailed as lacking in the statutory requirements, and for the reasons, in part, urged against the notice under discussion in the previous division of this opinion. In addition to such reasons it is pointed out that here there is not even a reference to plans and specifications. We need not again go over the subject. The notice did not comply with the statutory requirements.

VI. Recurring now to the first resolution of necessity, it may be stated that therein the second division of the main sewer is described to begin at the intersection of Grand avenue and Seventeenth street, and to run thence west eight blocks to intersect the first division.

7. Same.

On July 6, 1903, the city council passed an ordinance entitled " An ordinance creating a sewer district, providing for the construction of sewers therein, and for making assessments therefor." The provisions of said ordinance material to be noticed at this point are as follows: Section 1 designates as the " First sewer district of Emmetsburg " the territory described in the resolution of necessity of June 15th. Section 2 provides " that there shall forthwith be constructed in said district one main sewer and disposal plant, and the course of the sewer is marked out corresponding with the resolution of necessity except that the second division is described as nine blocks long, beginning at Pleasant street. The notice to contractors, it will be observed, did not mark the course of the sewer.

VII. The defendant firm, Shepard & Hanrahan, was awarded the contract for the construction of the main and

lateral sewers ordered June 15th; and on July 8th a writing

**8. SPECIAL ASSESSMENTS.** was entered into between the city and said firm, whereby the latter agreed to construct " the main sewer as set forth and described in the ordinance of said city " according to the Tschirgi plans and specifications, together with the three lateral sewers ordered, for the gross sum of $18,192.50. The writing recited that the work shall be done in first-class manner, and that upon completion and acceptance by the city the latter shall pay " two thousand dollars from its general fund, and to pay over such other sums as shall have been subscribed by its citizens for the construction of said sewer and paid in, and the balance . . . the city agrees to assess upon all lots in the said sewer district and issue sewer certificates therefor . . . as provided by chapters 7 and 8, title 5, of the Code." On August 19, 1903, there was introduced in the city council, and adopted, a resolution, reciting that the block of sewer between Pleasant and Grand was included in the resolution of necessity, but not in the notice to contractors; " therefore, be it resolved . . . that the sewer committee be authorized to have Shepard & Hanrahan build this additional block at the same price per foot as the balance of said submains." Said block was constructed, and the additional cost thereof was included in the assessment proposed to be enforced. In respect of this it is contended that the proceeding was without authority; there having been no attempt at compliance with the statute. We think the contention is meritorious, and should be sustained. It may be added that, aside from the want of authority, there is another reason why the cost of the block should not be assessed for. It will be observed that the contract agreement, as expressed in the writing, was to construct a sewer as described in the ordinance. And, as we have seen, the ordinance marks the sewer as beginning at Pleasant street.

VIII. In the assessment resolution there is included an item of $1,246 as the cost of a disposal ditch. This is

questioned by plaintiffs, and the record fails of any explana-
tion of the item.   Vaguely it appears that
such a ditch was dug by some person, and
there is a suggestion in the evidence that it was done pur-
suant to the direction of some member or members of the
council.   With this as the state of the record it is clear that
there was no authority to proceed to a special assessment
to pay the cost of such ditch.

9. SAME.

IX.   Shepard & Hanrahan were also awarded the con-
tract for the construction of the lateral sewers ordered in
October, 1903, and a further writing was entered into having
reference to such work.   Therein the contract
price is stated to be the sum of $1,833.60, or
82½ cents per foot of sewer, and $46 for each manhole, and
to be paid in sewer certificates representing assessments on
abutting and adjacent property.   And in June, 1904, said
firm announced the completion of the entire work, and made
tender thereof to the city.   The city refused to accept, assign-
ing as a reason that the work did not comply with the con-
tract; that it had been imperfectly and negligently done,
and was incomplete.   In this situation — and the contractors
having left the city — the defendant B. O. Hanger appeared
on the scene.   It may here be noted that the reason for mak-
ing Mr. Hanger a party to this action does not appear.   His
interest in the contract, as far as disclosed by the record,
was that he had assisted the contractors to obtain money to
carry on the work by indorsing their notes, which notes were
still outstanding.   Acting on his own motion, Hanger pro-
ceeded to open up the trenches in places and do some correc-
tion work.   September 30, 1904, the city — acting through
the council — and Hanger entered into a stipulation in writ-
ing, providing for the deposit in bank by Hanger of $688,
to be paid over to the city when the latter should pay and
deliver to Shepard & Hanrahan the cash payments and sewer
certificates as provided by the contracts.   It seems that
Shepard & Hanrahan approved of the stipulation, and the

10. SAME:
power of
council.

money was deposited by Hanger. Thereupon the city council by resolution ordered that there be paid to the contractors from the sewer fund the sum of $4,000 for the cost of constructing one of the lateral sewers embraced in the second contract, and the balance of the cost of such lateral sewer to be assessed against the property abutting thereon; that the cost of the main sewer, except the sum of $2,000 paid for cost of intersections, " be assessed against the property abutting thereon and adjacent thereto for lateral privileges and upon all the property in the sewer district according to benefits as provided by ordinance and the statute." Notice was given to property owners that plats and proposed schedules of assessment were on file, and of the time when objections thereto, on account of errors, irregularities, and inequalities, would be heard and considered. Some of the plaintiffs in this case joined with other property owners in filing objections. We shall have occasion to refer to the objections thus made in the further course of this opinion. Suffice it to say at this point that, after a few corrections in the amounts of individual assessments, the schedule was approved by the council, and an assessment ordered therewith. The resolution of approval included by description the main sewer, and each of the laterals, and recited the total cost of the sewer to be $21,761; " cost of disposal ditch, $1,246; cost of incidentals, $300."

Counsel for appellants contend that in no event was there jurisdiction in the council to provide for the payment of the amount due under the first contract by the levy of a special assessment, and the issue of certificates. It is pointed out that it is provided in the resolution of necessity that the cost of the sewer shall be paid by assessment againt the real property included within the assessment district, and from the general fund. And it is the argument that here no more was meant than that a district tax should be laid on a valuation basis and a fund to meet the cost thus created; that, having selected a method, the authority of the council must

be held limited to making payment according to that method. On the other hand, it is contended for appellees that the spirit and purpose of the expression in the resolution was to pave the way for a special assessment; and that such was the thought of the council would seem to find confirmation in the subsequent action taken by it.   In the ordinance to which reference has been made these provisions appear: Section 7 provides: "That there be and is hereby appropriated out of the general revenues of the city the sum of $2,000 for the cost of the said main sewer and disposal plant." Section 8 provides for a sewer fund, to be raised by levy each year, of two mills on the dollar upon all the property in the district, "which fund shall be used for construction purposes or for maintenance as the council may determine." Section 10 provides that, when the main sewer and disposal plant have been completed, all the remainder of the cost not hereinbefore provided for shall be assessed upon all the lots within the district, in proportion to the special benefits.   Section 11 provides that the council shall determine what part of the cost of lateral sewers ordered constructed shall be paid out of the sewer district fund or general fund of the city, and the balance shall be assessed against the lots specially benefited thereby.   Then there is the provision of the contract as to payment, and we have now the additional fact of the assessment resolution and schedule.

Should we grant the premises assumed by counsel for appellants, there would seem to be no escape from the conclusion reached by them.   Having secured the acquiescence of property owners in the construction of a sewer to be paid for by taxation, most certainly the council could not change front when the day of settlement came, and order payment to be made through the medium of a special assessment.   The property owners had the right to rely upon the resolution of which they were given notice, and on the question of the adoption of which they had the right to be heard.   Their rights could not be affected by any change in method of pay-

ment subsequently determined upon by the council on its own motion, and this whether by ordinance or in a construction contract.

But, accepting of the view of counsel for appellee, still we think the contention for illegality must be sustained. Authority to levy a special assessment must be found in the statute, and no provision on the subject can be found which goes farther than to authorize a levy upon abutting or adjacent property. Code, sections 792–810. Without dispute, the major portion of the property constituting the sewer district in the defendant city was without the zone of abutting or adjacent property. Indeed, by a resolution adopted, the council drew the line at 165 feet from the sewer. There was then no authority for an assessment upon nonadjacent property. And we think there are no grounds on which to justify an assessment on the property within the zone of adjacency. Even if the assessment were divisible — a subject of much doubt — it still remains to be said that there was a failure of compliance with Code, section 810. It is a provision of that section that, if it is proposed to specially assess abutting property, the resolution of necessity must so declare, and, if adjacent property is to be included, the resolution must describe or point it out.

11. Same.

X.   Conceding, for the purpose of argument, the power to make an assessment, the appellants contend that many errors and irregularities entered into the resolution and schedule providing therefor. In view of our conclusions already expressed it is not necessary to a disposition of the case that we take note of this contention. But in view of the position taken by counsel for appellees in argument we shall do so in brief, as the situation gives added emphasis to our thought that in the interests of those who must pay the cost of all public improvements a rigid adherence to the statute should be insisted upon. To begin with, there is much confusion in the record respecting the amount for which an assessment could in any event be laid.

12. Same.

A district sewer fund was created under the ordinance, and from this by special resolution $4,000 was ordered paid to apply on the cost of one of the lateral sewers; $2,000 was appropriated from the general fund, to apply on the cost of the main sewers; and about $500 was collected from private subscription. Notwithstanding this the total of the special assessment figures $21,038. Moreover, there is evidence tending to show that, after making allowance for all certificates that could be claimed by the contractors, there are others left on hand for which there seems to be no rightful claimant. It may be possible to glean from the record where the discrepancy, if such it is, comes in; but in view of the conclusion we reach on the whole case we shall not undertake the task. It is the rule of all the cases, here and elsewhere, that, where an assessment includes items and amounts which could not legally be assessed for, or is for an amount grossly in excess of what could be legally assessed, it must be held void. *Gallaher v. Garland,* 126 Iowa, 206.

A further complaint of the assessment is that it is not laid according to benefits. An inspection of the schedule discloses that on a portion of the lots in the district is levied 13. SAME: special benefits. a district tax, so-called, of $4, and on the remainder of the lots the levy is $15. It is said in the course of argument that the only ground of distinction marked by the levy is between residence and business lots. And the accuracy of this statement is not challenged. Against a portion of the lots is levied a lateral tax, as to some $8, as to others $9, and still others $24. By the ordinance it is provided that both the assessments for the main sewer and the lateral shall be in proportion to special benefits. Such also is the provision of statute. Taking the situation as presented, we do not see how the assessments can be approved as in conformity with the benefit rule. In the case of the main sewer it may be conceded that the construction thereof would result in benefit to the whole district, but the benefit would be general. There is no possible ground on

which to plant the assertion that the special benefit to a lot
too remote for direct connection would be equal to that con-
ferred upon a lot within the zone of adjacency.   And in the
case of lots adjacent to a lateral the district assessment is
for the same amount as all other lots, and there is added the
assessment for the cost of the lateral.   Assuming that for the
one the assessment on a particular lot was in proportion to
special benefit, it is difficult to see how the same lot could
be subjected to a special benefit assessment for the other.
Within our view a lot derives special benefit from a sewer,
whether main or lateral, when it is so situated and con-
structed as that connection can be made therewith.   In other
words, it is the opportunity presented for individual use that
determines the question of special benefit.   The lot might
perhaps be benefited generally by the construction of the
main sewer, however remote therefrom, and it might be
specially benefited by a lateral affording opportunity for
direct connection; but in the very nature of things it could
not be specially benefited by both.

Finally, it is contended that the work of construction
was not done according to contract.   The principal matters
of complaint are that the contractors failed to follow the
grade established; that they failed to properly
form the trench bottom for the reception of the
pipe; that some of the pipes laid were broken;
and that they failed to cement together or seal the joints of the
pipe.   That the record shows the work to have been more or
less defective cannot be denied.   This appears from the evi-
dence of persons who observed the work while in progress; so,
also, Hanger found defects in opening the trenches in places,
and the stipulation entered into between him and the council,
approved by the contractors, admitted the existence of still
further defects, the extent of which cannot be told, as only a
partial examination was made.   It is fair to say in this con-
nection that the evidence shows that some of the difficulties
experienced in putting the plant into operation was due to

14. SAME:
defective
construction.

the fault of the engineer in drawing his plans, and in subsequently setting his grade stakes. But, conceding this, the fact of defects in material and workmanship not attributable thereto remains, and an assessment was not proper until such defects had been remedied. *McCain v. Des Moines,* 128 Iowa, 331; *Wingert v. Snouffer,* 134 Iowa, 97. It is said that, in respect of such defects, the plaintiffs are bound by the action of the council in making settlement under the Hanger stipulation. But this cannot be so. We need not consider what would be the situation if the amount paid in by Hanger had been deducted from the contract price. It was not so done, and, as far as appears, the amount when it reached the hands of the city would go into the general fund. There could be no right to compel lot owners to accept of a defective improvement and pay the full contract price under special assessment simply because the city treasury was otherwise enriched by a sum paid in by the contractors under stipulation with the council.

XI. It is urged in behalf of defendants that plaintiffs are not in position to insist upon the various matters of defect and irregularity set up by them, and to which we have made reference. It is said, to begin with, that plaintiffs had notice of the original resolution of necessity, and some of them were present when the same was adopted; that they knew of the letting of the contract, and that the work was entered upon and prosecuted to completion; that they knew of the purpose of the council to provide in the main for the cost of the main sewer and the three laterals by special assessments; and that they made no objection to the resolution, or to the contract made pursuant thereto, or to the prosecution of the work under such contract. We do not see how the knowledge of plaintiff respecting the resolution of necessity can avail defendants anything. Plaintiffs may have been entirely content to have a sewer system put in, the expense to be paid in part from the general fund and in part by a tax

15. SPECIAL ASSESSMENTS: objection by lot owners: estoppel.

to be levied upon the property within the sewer district. The resolution did not warn them that a special assessment was to be resorted to, and they were under no duty to remain upon guard to see to it that the council did not subsequently attempt to change such method of providing for payment. This is elementary in the law on the subject, and it will be sufficient to refer to cases already cited. There is no evidence that plaintiffs had legal notice or knowledge of a purpose to assess specially for the cost of the main and the three lateral sewers until the assessment resolution was brought forward.

The further contention is made by counsel for appellees that full notice and opportunity were given plaintiffs to appear and present their objections to the proposed assessment. 16. SAME: void assessment: equitable relief. As to some of the plaintiffs it is said that they did appear and file objections, but that they did not appeal from the resolution adopting the schedule and ordering the assessment. And it is the argument here that all the matters of defect or irregularity in the proceedings were waived by plaintiffs, either by failing to appear before the council and file objections, or by abandoning the objections where such were filed. It appears that notice was given of the time for hearing objections, and some of the plaintiffs appeared. We have repeatedly held, however, that jurisdictional defects are not waived by a failure to appear and object to an assessment, or a failure to appeal from the order of the council adopting an assessment resolution. *Comstock v. Eagle Grove, supra,* and cases cited. And it is equally well settled that, as against an assessment void for want of jurisdiction, equity will grant relief by injunction. In addition to the cases already cited, see *Diver v. Bank,* 126 Iowa, 691; *Railway v. Phillips,* 111 Iowa, 377. Errors nonjurisdictional in character, and being such as that it is possible to the council to make corrections, may be waived by a failure to appear and object, or, having objected, by failure to appeal. But it is only

errors in an assessment that the council has authority to make which are thus waived. A failure to object cannot be given effect to relate back and infuse validity into a contract the council had no power to make. Hence it is that we must hold that these plaintiffs are not estopped from challenging either the validity of the several contracts here in question, or the assessment attempted to be made to liquidate the expense incurred thereunder. We conclude that the relief by injunction prayed by plaintiffs should have been granted. The case will be remanded that a decree in harmony with this opinion may be entered.— *Reversed.*    :

DEEMER, J.— I agree to the conclusion. Many, if not most, of the defects were waived; but, as one or more were prejudicial, I am constrained to concur in the result.