TONY AMODEO COMPANY, Appellant, v. TOWN OF WOODWARD et al., Appellees.

**MUNICIPAL CORPORATIONS:** Public Improvements—Recovery of
1 **Deposit.** The published notice of the reception of bids on a paving improvement is not mandatory, *in so far as it fixes the amount of the deposit to accompany the bid.* A bidder who makes the deposit in the amount called for by the *plans*, and learns, before his bid is accepted, that said deposit is materially less than required by said *notice*, and does not withdraw his bid or deposit, may not recover his deposit when it appears that the city was compelled to readvertise and to relet the contract at a loss exceeding the deposit.

**MUNICIPAL CORPORATIONS:** Public Improvements—Discrepancy
2 **Between Notice and Specifications.** A bidder whose accepted bid is exactly responsive to the specifications as to the thickness of a proposed paving may not complain that the published notice for bids was somewhat equivocal as to thickness.

*Appeal from Dallas District Court.*—H. S. DUGAN, Judge.

NOVEMBER 22, 1921.

ACTION at law to recover $1,000, being the amount of a certified check deposited with the city clerk of Woodward, Iowa,

accompanying appellant's bid on a certain paving contract. Trial to the court without a jury. The trial court found for the defendants, and rendered judgment against plaintiff for costs. Plaintiff appeals.—*Affirmed.*

*Chester J. Eller,* for appellant.

*S. Trevarthen,* for appellees.

PRESTON, J.—1. Tony Amodeo is the owner and proprietor of Tony Amodeo Company, which is a trade name. About May, 1918, defendant town advertised for bids for paving and grading a certain portion of one of its streets.

1. MUNICIPAL CORPORATIONS: public improvements: recovery of deposit.

Plaintiff, a contractor, residing at Des Moines, went to Woodward, and was shown the proposals, specifications, and contract referred to in the published notice. The notice provided that, as evidence of good faith and responsibility, each bid must be accompanied with a certified check in the sum of 10 per cent of the amount of the bid, as security that the contractor would enter into a contract for the doing of the work, and would give bonds to carry out the terms of the contract and for faithful performance thereof, etc. Ten per cent of plaintiff's bid, according to his evidence, would be about $1,900. The proposals and specifications fixed the amount of the certified check at $1,000, thus, evidently by mistake, causing a discrepancy between the published notice and the specifications. After examining the papers, plaintiff made his bid, accompanied by his certified check in the sum of $1,000, which was deposited with the clerk. Plaintiff claims that there was a mistake of about $8,000 in his bid; that it was too low. The mistake was that of plaintiff's own engineer. Bids were presented by other contractors. Plaintiff's bid was so much lower that his attention was called to it, and there was some discussion between plaintiff and the council as to whether he would be able to go on, if his bid was accepted. This was before the council accepted his bid. His bid was accepted by the council, and thereafter plaintiff claimed to the council that there had been a mistake, and refused to enter into a contract or proceed further. He demanded back his check. Thereafter, by resolu-

tion of the council, the check was ordered cashed, and passed to the credit of the town. On the same day, the council, by resolution, provided that notice to contractors for bids on paving be republished. This was done; and later, a contract was let, and the work was done at a higher price than plaintiff's bid, and higher than the next lowest bidder at the time plaintiff's bid was accepted by the council. Plaintiff's bid was $1.65 per square yard. The bid next higher than plaintiff's was $2.33 per yard; and the bid finally accepted, under which the work was done, was $2.58 per yard. There were about 12,000 yards; so that the city, or property owners, would be compelled to pay some $3,000 more than they would under the bid of $2.33, or about $11,000 more than they would under plaintiff's bid. At least, it is so alleged by defendant in a counterclaim, in which a judgment is asked against plaintiff for the loss to the town. Plaintiff demurred to the counterclaim, and his demurrer was sustained. The demurrer was on several grounds, one of which was that plaintiff had not given any contract, and could not, therefore, be held for the damages. This suit was brought to recover the $1,000.

Plaintiff's claim is that his bid was illegal, because the notice called for a deposit of 10 per cent and the specifications called for a $1,000 deposit, and because he was required to deposit only $1,000. Plaintiff's foreman testifies that he first learned that the notice required 10 per cent of the bid right away after he filed the bid. But the matter was discussed as to whether there was not a mistake, and as to whether plaintiff could go on under his bid. This was before it was accepted. After discovering the provision of the notice, and before it was accepted by the council, plaintiff made no effort to correct his bid, or to withdraw it, or to withdraw the check. He gave the council to understand that he would go on with it, and thereafter his bid was accepted. Had plaintiff withdrawn his bid, the council would, no doubt, have accepted the next lowest bid,— at least, they could have done so. The defendants claim that the town and the council waived the requirement that plaintiff should deposit a check equal to 10 per cent of his bid, and that plaintiff has waived his right to a return of the check or its proceeds, and that he is estopped from claiming it. Plaintiff's

bid was considered by the council, notwithstanding the fact that the deposit was only $1,000. After plaintiff's bid was accepted by the council, the town sent its representative to Des Moines, and within the 10 days presented a contract, asking plaintiff to sign it, which he refused to do. The town also asked plaintiff to waive the repayment of the $1,000, which he refused to do. Plaintiff's foreman testifies that they went back to Woodward the next day after the bid was accepted, and that he told them they couldn't afford to go ahead with the job, because of the mistake in the amount of the bid; that they came back, three or four days after that; and that plaintiff and his attorney from Des Moines then demanded back the check. Plaintiff himself testifies that he was at Woodward and at the council meeting, and at such meeting discovered that the deposit of $1,000 did not comply with the published notice; and that, a few days after his bid was accepted, he demanded the return of the check. He also testifies that the matter was discussed in the room off the council room. He signed the proposal at $1.65 per yard.

It is quite apparent from the record that plaintiff refused to go on and to enter into the contract and to give bond after his bid had been accepted, because his bid was too low. Had he entered into the contract and given bond, his loss would have been much more than the $1,000 deposited as a guaranty that he would execute the contract and bond for its performance. Though there is a discrepancy as to the amount of the deposit, in the specifications and in the published notice, this would apply to all bidders alike. It is conceded that, so far as the publication is concerned, the notice was duly published in the newspapers. It was published as a notice. There was no partiality or favoritism. No one was prevented from bidding by the discrepancy, or by the fact that plaintiff deposited only $1,000. This was favorable to him, it is true; but, even though other bidders may have seen the notice, and deposited an amount equal to 10 per cent of their bid, no one was prevented from bidding.

It is conceded that the precise point has not been heretofore presented. Appellant cites Code Section 813, and relies greatly upon the case of *Bennett v. City of Emmetsburg*, 138 Iowa 67, 74, and cases therein cited. That was a case in regard to the

assessment to pay the cost of the construction of a sewer. There has been some change in the statute since the decision of the *Bennett* case, but not as to the amount of the deposit. The statute provides that the notice "shall state, as nearly as practicable, the extent of the work and the one or more kinds of materials for which bids will be received, when the work shall be done, the terms of payment fixed, and the time the proposals shall be acted upon." In the *Bennett* case, these provisions were held to be mandatory and jurisdictional; and it was held in that case that such mandatory provisions had not been complied with, and that the purpose of the law was to avoid favoritism, and to secure liberal bids. The latter part of the section provides that:

"All bids must be accompanied, in a separate envelope, with a certified check, payable to the order of the treasurer, in a sum to be named in the notice for bids, as security that the bidder will enter into a contract * * * and will give the bond * * *. All such checks, where the bid has not been accepted, shall be returned," etc.

In nearly all, if not all, of the cases cited, the question arose upon objections by property owners against assessment of their property. We have held that the purpose of the initial resolution and of the notice thereof is to bring before the parties in interest the question as to whether or not any pavement should be laid, and to give all an opportunity to be heard upon that question. *City of Bloomfield v. Standley,* 174 Iowa 114, 119; *Benshoff v. City of Iowa Falls,* 175 Iowa 30, 36. Other cases hold that the plans and specifications are for the purpose of entering into a contract, and not for the purpose of advising the property owners of the nature of the proposed improvement. *City of Bloomfield v. Standley,* 174 Iowa, at 121; *Miller v. City of Oelwein,* 155 Iowa 706.

Of course, when a bid has been accepted and a contract entered into, and the plans and specifications have been made a part of the contract, the property owners would be entitled to have the contract substantially performed according to its terms. In this case, the published notice had served its purpose, so far as the property owners are concerned. When plaintiff's bid was accepted, had he gone on and entered into the contract and given

bond, the contract and bond would be the property owners' protection. The defect or discrepancy between the notice and the plans and specifications would be no concern of the property owners'. In other words, the notice, in so far as it relates to the amount of the check, is not mandatory, and is not one of the jurisdictional questions before enumerated in the statute, and essential to give the council power to contract. The matter complained of as to the size of the check is not an illegality of which the property owners could complain. The case of *Bennett v. City of Emmetsburg,* supra, and other like cases, were referred to in *Koontz v. City of Centerville,* 161 Iowa 627, 630; and we said of them, Mr. Justice Weaver speaking for the court, that they had been distinctly overruled, so far as they relate to the proposition that, where jurisdiction has been once regularly acquired by the council, it may be lost by subsequent irregularity, etc. This, of course, is where the mandatory and essential provisions mentioned in the statute, relating to the property owners, have been complied with. In the *Koontz* case, the second publication of notice to bidders was defective; but we held that this did not affect the jurisdiction of the council to make an assessment.

Appellees contend that, as to matters other than jurisdictional facts, a substantial compliance with the statute is all that is required. They cite, to sustain this, *Hubbell, Son & Co. v. City of Des Moines,* 168 Iowa 418; *Fullerton v. City of Des Moines,* 147 Iowa 254 (30 L. R. A. [N. S.] 220, Note); *City of Bloomfield v. Standley,* 174 Iowa 114, 119. In *Urbany v. City of Carroll,* 176 Iowa 217, 222, it was said that the authorities agree that there must be a substantial compliance with the proposal, to warrant the consideration of the bid, etc. In the instant case, plaintiff did deposit a certified check in the amount fixed in the specifications upon which he was bidding, though in a different amount from that fixed in the notice. Whether the council would, for that reason, have been justified in refusing to consider plaintiff's bid, we need not determine. His bid was considered and accepted.

Other cases state the rule to be that a resolution for local improvements which describes the improvement in a general way, with such certainty, when considered with the estimate, as to

reasonably advise property owners as to the nature of the improvement, is sufficient, without containing all the details required. A case in point is *Tunny v. City of Hastings*, 121 Minn. 212 (141 N. W. 168). The statute of Minnesota provided that no bid should be considered, unless accompanied by a cash deposit or certified check for at least 15 per cent of the amount bid. The advertisement for bids stated that no bid would be considered unless accompanied by cash deposit or certified check for at least $500, which was less than 15 per cent of the bid. The bid was accepted. The court held that the advertisement for bids, the bid of plaintiff, and the action of the council in accepting it, constituted a contract, binding on both parties; that the fact that the advertisement for bids required a deposit of only $500, instead of 15 per cent of the contract price, as provided by the statute, did not affect the validity of this contract; that this provision of the law was intended wholly for the protection of the city; and that plaintiff was in no position to complain because the defendant required of him less than the statute provided for. There was the further question in that case as to whether the parties could mutually abandon the contract, so as to entitle plaintiff to recover his deposit. Such is not the situation in the instant case. There is no claim of that kind in the pleadings or argument, and the evidence shows that the city was at all times holding plaintiff to his contract. As before stated, we think it clear that the reason plaintiff refused to enter into a contract was because his bid was too low. Had he entered into the contract, he would, by its performance, have lost much more than the amount of the check. As it is, the city has lost a considerable sum by reletting at a higher price because of plaintiff's failure to contract, and because of his failure to withdraw his bid and the check after he discovered the alleged mistake, and before his bid was accepted. Had he done the latter, he would have protected himself and the city as well. This disposes of the principal point in the case, and the one most relied upon.

2. One or two other points are discussed briefly. They were raised in the lower court; but, as we understand the opinion of the trial court, they were not relied upon, and plaintiff's counsel so stated. The advertised proposal asked for bids for different kinds of material. One of these was cement, eight

2. MUNICIPAL CORPORATIONS: public improvements: discrepancy between notice and specifications.

inches or less thick. The specifications, however, provided for a thickness of six inches. Though the notice was legally published, plaintiffs says he did not see it. He did see the specifications. The specifications were specific that the thickness of the cement should be six inches. Plaintiff's bid was for a thickness of six inches. It seems to us that this is a matter of which plaintiff may not complain.

It is also thought by appellant that, because of the alleged mistake, plaintiff is not bound. This matter has been before discussed, and we have shown that plaintiff knew all the facts before his bid was acted upon, and in time to have withdrawn it. This he did not do, but permitted his bid to go before the council and to be considered by them and acted upon.

The judgment is—*Affirmed.*

EVANS, C. J., WEAVER and DE GRAFF, JJ., concur.