The First National Bank of Red Oak, Iowa, Appellant, v. The City of Emmetsburg, Iowa.

**Municipal corporations:** PUBLIC IMPROVEMENT: EXERCISE OF POWER.
1  A city has statutory power to contract for a public improvement, and in doing so exercises a proprietary or *quasi* private power for its own benefit and that of the inhabitants, as distinguished from its legislative, public and governmental power; and is governed by the same rules in the exercise of such power as govern private individuals or other corporations.

**Same:** LIABILITY OF CITY: *Ultra vires*: ESTOPPEL: RATIFICATION. A
2  city having power to contract for a public improvement, irregularities in the exercise of that power will not relieve it from liability for benefits actually received under the contract: Nor can it escape liability on a plea of *ultra vires,* when the contract has been fully performed and it has received the benefits, but under such circumstances it is estopped, the same as an individual, from retaining the benefits and at the same time denying liability. Furthermore under the evidence in this case there was a ratification of the contracts for sewer construction, and a waiver of the right to object thereto.

**Same:** ACCORD AND SATISFACTION. A compromise, accord and satis-
3  faction by a city with the holder of assessment certificates issued under a public improvement contract is as binding upon it as though a private individual.

**Judgments:** FORMER ADJUDICATION. The judgment in an action to

enjoin the enforcement of special assessments, in which the city joined with the contractor and certificate holders as a party defendant, that the cost of the improvement could not be taxed against the plaintiff in that case and enjoining a further levy, but not determining any question between the city and its co-defendants, was not an adjudication of the right of the assignees of the holders of the certificates to enforce the same in a subsequent action.

*Appeal from Palo Alto District Court.*—HON. D. F. COYLE, Judge.

THURSDAY, NOVEMBER 14, 1912.

THE facts are stated in the opinion.

*Reversed* and *remanded.*

*Carr, Carr & Evans* and *O. M. Brockett,* and *John Menzies,* for appellant.

*E. A.* and *W. H. Morling,* for appellee.

SHERWIN, J.—This is a suit at law to recover the amount of the unpaid balance due on municipal contracts for the construction of sewers, represented by special assessment certificates for redemption, and for the payment of which defendant negligently failed to make provision. The petition, as summarized by counsel for appellant, alleges as follows:

The issuance by defendant of the certificates to the contractors as pretended payment of and compliance with the contracts therefor.

That the special assessment to create a fund for the payment of such of them as were involved in the suit had been vacated, and further levy therefor enjoined in Bennett et al. v. Emmetsburg.

That plaintiff is the present owner and holder of all said unpaid certificates, and of all rights of the contractors

to any remedy for collection of the amount thereof, with interest.

That B. O. Hanger had become liable to the plaintiff as surety for the contractors prior to September 30, 1904, for a large sum of money advanced to enable them to construct the sewers contracted for, and the certificates to be issued therefor, and all rights of the contractors were also pledged as security therefor, both to him and plaintiff, and plaintiff's assignor, Century Savings Bank.

That while so liable, and while a controversy was pending between said contractors and the defendant as to whether said sewer construction had been performed and completed in accordance with the contracts therefor, and under threats then made by the defendant to proceed against said contractors to enforce its remedies for such alleged breach, and on said 30th day of September, said Hanger, acting for himself and said contractors, entered into a compromise contract in writing set out in the petition, in which, in consideration of certain repairs and changes he had made under such demand, and of the further deposit by him of $688 to be paid to defendant upon its delivery of the special assessment certificates and otherwise performing its covenants in the sewer contracts, all controversy was fully settled.

That thereafter a dispute arose as to the right of the defendant to take down said deposit, because of its failure to levy the special assessment and issue the certificates within the time stipulated in said compromise agreement.

That at the September term, 1908, of said court, the Valley National Bank, holding the rights of said Hanger to said deposit by assignment set out, brought suit therefor against this defendant, and against the depositary, the Farmers' Savings Bank of Emmetsburg.

That the defendant answered therein that it had fully performed said compromise agreement, having therein made said sewer construction comply in all respects with the requirements of the plans and specifications, and had on account thereof become liable on all its covenants in the sewer contracts, and had, as required thereby, made the special assessment and issued the certificates in all respects as in said contracts agreed. All this, it declared in said answer, had been done in reliance upon said compromise

agreement, and pleaded certain alleged facts as an excuse for failure on its part to perform said compromise agreement within the time limited therein, and denied the right of plaintiff to complain of such delay because of alleged laches of Hanger.

That while said suit was pending, and on or about May 13, 1909, the Valley National Bank, plaintiff herein, sold and assigned its chose in action to this plaintiff by a written instrument set out in the petition, which was concurred in by B. O. Hanger by indorsement thereon.

That on or about August 17, 1909, said suit was compromised by the terms whereof the defendant received $600 of said fund; this plaintiff receiving the remainder after paying the costs of the suit.

That prior to September 20, 1904, Hanger had appeared before the city council of the defendant, and notified them fully of the facts of the relation which created his interest in having the sewer construction made satisfactory and paid for by the defendant as agreed.

That on or about the 19th day of September, 1904, said city council passed a resolution detailing what it claimed were the particular respects in which the work differed from the requirements of the contracts, and directed notice thereof to be served on Hanger and on the contractors, including demand that the same be remedied within ten days thereafter, failing which the defendant would do so and collect the cost thereof from the contractors.

That on the next day such notice was issued and served accordingly. Whereupon Hanger, for himself and said contractors, within said ten days entered upon the work of making the changes thus demanded, and, after having incurred something over $112 expense therein, substituted for the completion thereof said compromise agreement of September 30th, in the doing of all which he and the contractors relied upon the good faith of the defendant, and believed it thereby became bound to pay for said sewers in accordance with the contracts therefor.

That the sewer certificates all recited among other things that 'it is hereby certified and recited that all the acts, conditions, and things required to be done precedent to and in the issuing of this certificate have been done,

happened, and performed in regular and due form as required by law.   And the city of Emmetsburg hereby transfers to the said Shepherd and Hanrahan or assigns all right and interest of the said city of Emmetsburg in the assessment herein described, and the holder hereof is authorized to receive and collect said assessment by or through any of the methods provided by law for its collection as the same matures.'

That the defendant has accepted said sewers, possesses, uses, and controls the same, and enjoys all the benefits of its recognition of the validity of the contracts under which they were constructed.

That certain persons named against whose property the special assessment was levied, this defendant, the county treasurer, the contractors, engineer, Hanger, the Century Savings Bank, and assignors of plaintiff, were parties to the Bennett case.

That plaintiff and its several assignors in extending the credit and entering into the several transactions recited, relied upon the representations, covenants, and conduct of defendant recited, and would not have done so but for such reliance, and were, at the times thereof, ignorant of the fact, if it was a fact, that they were not in accord with the truth.

That this defendant had answered in said Bennett case denying generally and specifically the allegations of the petition therein, and declared the facts as to the controversy with the contractors, and the compromise thereof by the transaction of September 30th, and the performance of it with knowledge of the plaintiffs, estopped them from complaining; further, that they had waived the right, either by failure to object to the assessment upon due notice of proceedings for, or by failure to appeal from, adverse findings of the council on such objections as were then made, and because plaintiffs had petitioned for the sewers and they have been constructed and accepted and the citizens of defendant were then using the same and enjoying the benefits thereof; that they were concluded by the action of the council as a special tribunal, and had waived their right of complaint by failure to pursue such remedy; that such right, if it had existed, had been lost by laches and delay, and because, if the assessment were vacated, 'the defend-

ant would be in danger of an action in behalf of said contractor to recover personal judgment against this defendant for the construction of the said sewer, and thereby jeopardize and imperil the interests of the general taxpayers of the defendant and those who, in good faith, paid their said assessments.'

That in the trial of said Bennett case in the district court, and afterward· in the appeal thereof to the Supreme Court, the defendant had united with this plaintiff's assignors in controverting the contentions of the plaintiffs therein as to the invalidity of the sewer contracts, the special assessment, and the certificates, contending therein, among other things, that the success of the plaintiffs therein would subject the defendant to the liability claimed by the plaintiff in the present suit; that its liability had become· fixed by the compromise of September 30th if not otherwise; and generally claiming, as does now this plaintiff, that defendant is bound by its covenants in said contracts in view of the premises, and plaintiffs therein should not have the relief sought. And plaintiff herein averred that its assignors relied upon such conduct by the defendant and was led thereby to forego other remedy if any they had.

That defendant had refused, since the entry of final decree in the Bennett case, and still refuses, to take any action to make provision for payment of the balance due on the contracts.

That plaintiff's assignor, the Century Savings Bank, had extended its credit in part upon an order drawn in its favor by Shepherd & Hanrahan, October 31, 1903, on the city of Emmetsburg, and accepted by the latter about November 18, 1903, by which the defendant agreed to pay the money and to issue the certificates provided for in the sewer contracts to said bank. That therein it relied on the same together with said contracts, as creating binding obligations according to their terms, and thereupon made the loan to the contractors, afterwards assigned to plaintiff as shown by 'Exhibit H' to the petition, by reason of which defendant ratified said sewer contracts, waived any right to dispute the validity thereof, and estopped itself from doing so.

That there were many persons and parcels of property affected by said special assessment, not, however, involved

in said Bennett case, and that, as to such, nothing therein had and done was an adjudication.

That defendant should be held liable for the balance due on the contracts, as for a money demand, because of the making of the contracts and the failure to perform them, because it is estopped to deny their validity, because it bound itself thereto by new contracts of compromise, accord, and satisfaction as charged, because it is bound by its action in the Valley National Bank case, in taking the portion of the deposit there in suit on the claims made, based upon the claimed binding effect of the sewer contracts on which the compromise contract rested, as an election of remedies, and because of its ratification of said contracts and waiver of claim of alleged irregularities or illegality thereof.

Different exhibits were attached to the petition, which need not be set out in detail, but some of which will be hereinafter again referred to. The answer admitted "that the two sewer contracts and the several certificates of assessment as set out in the petition 'were executed by the persons named therein' and denied the other averments." It was averred:

That the sewer contracts were invalid because the officers who executed the same had obtained no authority to execute the same, and such invalidity had been adjudicated in the Bennett case. That defendant had not undertaken in said contracts 'to pay for said sewer in any other or different form than as therein specified and that the said Shepherd & Hanrahan, who were the plaintiff's assignors, therein, agreed to accept said certificates of assessment in full payment of the balance due them under said contracts.' That as obligations to pay from general revenues the contracts were void, 'for the reason that the same exceeds the amount of indebtedness which the defendant was authorized by law to incur.' That the resolution by the city council required by section 810 of the Code had not been adopted before making said contracts, nor did the record of its proceedings so show, and no sufficient notice of the passage of such resolution had been given. That a large part of the certificates in question had been issued as part payment

for lateral sewers provided for in the contract of July 3, 1903, as to which lateral sewers the council had not adopted a resolution as required by said section 810, and undertook to give the numbers of such certificates. That the contract of November 6th was for two lateral sewers, as to the proceedings for which there was the same defect.

Count 8 is a plea of abatement as to amount of certain certificates set out, paid under protest to the county treasurer, and involved in suit pending against him by this plaintiff therefor.

Count 9: That the officers of defendant had no jurisdiction to enter into any covenant of warranty contained in the certificates.

Count 10: That plaintiff's assignors had knowledge of all the alleged defects and irregularities in the proceedings of the council affecting said contracts.

The cause was tried to the court, and findings of fact adverse to the plaintiff were, in substance, as follows: That the yeas and nays were not called and entered of record on the resolution of necessity passed for the main sewer. That no resolution of necessity was passed, or notice given, as to the three lateral sewers ordered at the meeting of June 15th. The notice to bidders was defective as stated in the opinion in *Bennett v. City of Emmetsburg,* 138 Iowa, 67. That by oversight one block of the proposed main sewer was omitted from the description in the notice to bidders. On discovery of this, the council, by resolution, authorized the sewer committee to have the contractors construct this block at the same price as the rest of the "submains." Notice to bidders for construction of additional laterals ordered October 15, 1903, was defective as shown in the opinion in the *Bennett* case. And that the construction of the sewers had not been done in accordance with the contracts at the time Hanger made changes, and at the time of the compromise contract of September 30th.

The facts found in the plaintiff's favor are as follows:

(1) That attempt was made by defendant to comply with the statutory requirements preliminary to the execution of the sewer contracts, and afterward to perform the contracts.

(2) The execution of the compromise agreement by Hanger and the attempt by the city in consideration thereof to complete the sewers according to the contracts.

(3) That the council of defendant city passed the resolution authorizing the execution of the compromise agreement of September 30th, and accepting the sewers, recording the yea and nay votes thereon.

(4) That said council on July 23, 1904, passed the resolution reciting the objections made to the sewers and directing notice thereof, and of demand on the contractors, 'that unless they appeared upon said work with all necessary material and help within ten days from date of service of notice on them and began the work of completing said sewer . . . making said sewer in all respects fully comply with the said plans and specifications on the present grade as now laid, and push the work to completion with all reasonable speed, and with due diligence, said city of Emmetsburg will consider said contract abandoned by said contractors, and will enter upon said work and complete in all respects in accordance with said plans and specifications and said contract at the expense of said Shepherd & Hanrahan, and recover the costs and expense of the work from Shepherd & Hanrahan or from those who are responsible for the performance of the contract.' That the yeas and nays were taken on this resolution.

(5) That such notice was issued as directed in the resolution and served on Shepherd & Hanrahan and B. O. Hanger.

(6) That said council passed the resolution accepting said sewers and directing the issuance of the special assessment certificates September 30, 1904.

(7) That the certificates for the amount of which recovery is sought in this action were issued and delivered in pursuance of the resolution.

(8) That the defendant herein filed an answer in the suit of the Valley National Bank for the money de-

posited by Hanger under the compromise contract of September 30th as alleged in the petition herein.

(9)    That suit was compromised as alleged, the defendant therein receiving and appropriating $600 of said sum.

(10)    The defendant never offered to place the parties affected in statu quo, or to surrender any benefit received.

(11)    The city attempted to perform the contracts on its part as alleged.

(12)    The defendant never undertook in its corporate capacity to repudiate or rescind the contracts with Shepherd & Hanrahan, under which the sewers were constructed.

The trial court's conclusions of law may be thus summarized:

(1)    The contracts are void for the irregularities found as facts, except as to proceedings since June 15, 1903, as to which latter there can be no recovery, because of failure to show separate amount thereof.

(2)    That there is no liability as for tort, because there was no duty which could have been violated.

(3)    The facts do not constitute an estoppel, or afford a basis upon which to predicate liability.

There was a judgment for the defendant on the merits, and plaintiff appeals. There is no real controversy over the facts stated in the petition. Many of them are admitted in the answer, and those not admitted were proved. The questions for our determination are therefore legal only, and these we will discuss, so far as we consider discussion necessary, in the order of presentation by appellant's counsel.

Appellant contends that the contracts were not originally void; that, as to the additional laterals, the court found that a resolution of necessity was adopted October 15, 1903, and notice given to contractors, inviting bids, and thereafter the letting of the contract for these laterals for $1,833.80; that as to the main sewer it was found that an attempt was made by the city council to pass a resolu-

tion of necessity June 15, 1903, but there was a failure
to call and record the yeas and nays; that at the same meet-
ing three lateral sewers were ordered for which no resolu-
tion of necessity was ever passed, or notice of intention to
pass one given; that subsequently notice to bidders for the
construction of such main and lateral sewers was published,
but was defective as found in the opinion of the *Bennett*
case, *supra;* and that the contract for the main and lateral
sewers first ordered was let to Shepherd & Hanrahan for
the gross sum of $18,192.66. And, based on the above
facts, appellant says that the preliminary proceedings by
the city council were sufficient to confer jurisdiction to exe-
cute the contract under the special assessment statute. Ap-
pellant says that any holding to the contrary in *Bennett v.
City of Emmetsburg, supra,* has been overruled in later
decisions by this court, and that, in any event, the decision
in the *Bennett* case is not controlling here. Appellant fur-
ther contends that the facts create an estoppel against the
right of the city to dispute the validity of the contract;
that they were not *ultra vires,* but were within the powers
granted to the city, and in their execution the city was
exercising its business powers as distinguished from govern-
mental power, and that in respect to its business power a
municipality is subject to the same application of the doc-
trine of estoppel as an individual or corporation; that by
reason of the facts the city conclusively ratified the con-
tracts for sewer construction, and waived the right to ob-
ject thereto; that the facts show a clear case of compromise,
accord, and satisfaction as binding upon the city as would
have been the case if it were an individual or private cor-
poration, and appellant also says there was an election of
remedies on the part of the city, which now concludes it.

At the threshold of the several propositions lies the
question of the power of the city to enter into contracts of
this kind. If it had the power to construct sewers and
to contract therefor, irregularities in the exercise of such

power will not in this case relieve the city from liability.

Had the city such power? Section 695 of the Code makes cities and towns bodies corporate, and gives them general power to contract and be contracted with, and to sue and be sued, and to exercise the inherent and implied powers of such corporations. This is a general grant of power, and our attention has not been called to, nor have we been able to find, any statute with reference to the letting of contracts for public improvements to be paid for by special assessment of the cost thereof to property benefited, which in terms or by necessary implication limits the power conferred in the general grant prior to the enactment of the special assessment statute. Sections 791, 794, 796, 810, 817, and 819 of the Code give cities the power to construct sewers and to assess the cost thereof upon the property benefited, or to pay such cost from a sewer district or from the general fund, as the city may elect. It is apparent, therefore, that cities are authorized by the statute itself to make contracts for the construction of sewers, where the cost thereof is to be paid from a general fund and not from special assessments, and the contracts thus authorized must, we think, relate to the business powers of the city as distinguished from its governmental powers. It seems to be correctly held generally that a city has two classes of powers, which have been stated as follows:

1. MUNICIPAL CORPORATIONS: public improvement: exercise of power.

A city has two classes of power—the one legislative, public, governmental, in the exercise of which it is the sovereignty and governs its people; the other, proprietary, quasi private, conferred upon it, not for the purpose of governing its people, but for the private advantage of the inhabitants of the city and of the city itself as a legal personality. In the exercise of the powers of the former class, it is governed by the rule here invoked. In their exercise it is ruling its people, and is bound to transmit its powers of government to its successive sets of officers unimpaired. But in the exercise of the powers of the latter class, it is

controlled by no such rule, because it is acting and contracting for the private benefit of itself and inhabitants, and it may exercise the business powers conferred upon it in the same way, and in their exercise it is to be governed by the same rules that govern a private individual or corporation.

Illinois Trust & Savings Bank v. City of Arkansas, 76 Fed. 721 (22 C. C. A. 171, 34 L. R. A. 518); Southern Bell Telephone Company v. City of Mobile (C. C.) 162 Fed. 523; City of Winona v. Botzet, 169 Fed. 322 (94 C. C. A. 563, 23 L. R. A. (N. S.) 204). The dual character of municipal corporations has already been distinctly recognized by this court, and we have in effect, at least, directly adopted the rule stated in the quotation from the Illinois Savings Bank case. State v. Barker, 116 Iowa, 96, and cases there cited. But the last-cited case does not stand alone among our decisions as a recognition of the rule.

In Marion Waterworks Co. v. City of Marion, 121 Iowa, 321, the action was to recover for hydrant rentals in accordance with the terms of a contract, which, before 2. SAME: liability being fully performed, was wholly void, beof city: cause the question as to whether or not it ultra vires: estoppel: should be entered into was not submitted to ratification. the vote of the people as required by law. We held there, as we do here, that the city had the power to make the contract, and held that, having such power, though it was defectively exercised, the city was liable for benefits received.

And in many other cases we have recognized and enforced the rule by holding that corporations of this kind can not escape liability on a plea of ultra vires, where the contract has been fully performed, and the defendant corporation has received the benefit thereof. Kagy v. Ind. Dist., 117 Iowa, 694; City of Ida Grove v. Ida Grove Armory Company, 146 Iowa, 690; Thompson v. Lambert, 44 Iowa, 248; McPherson v. Foster, 43 Iowa, 48. Whatever

may have been the rights· of property owners who were specially assessed for this improvement, we think it ·clear that the city should be held to the same 'business integrity that the law requires of any other corporation, or of an individual, and that the rules of estoppel and waiver should be applied to their business dealings as completely and as effectively as to other business transactions.   There is, in our opinion, no legal reason, and there certainly is no moral one, whereby a municipal corporation should be permitted to reap the benefit of a fully completed contract and escape liability therefor under the plea of *ultra vires,* where the power exists to contract, but the same has been exercised in a negligent manner and even so irregularly as to release noncontracting parties from liability.   That a city may be estopped under such circumstances is well settled by our own decisions.   See cases cited above and *Turner v. Cruzen,* 70 Iowa, 202; *Spencer v. Andrews,* 82 Iowa, 14; *Duetzmann v. Kuntze,* 147 Iowa, 158; *Bellows v. Dist. Twp.,* 70 Iowa, 320; *Scofield & Cavin v. Council Bluffs,* 68 Iowa, 695.

Under the facts and the authorities already cited, there was a complete ratification of the contracts for sewer •construction, and a waiver of the right to object thereto.

Furthermore, it is conclusively shown that there was a compromise and an accord and satisfaction, and this was as binding on the defendant city as would have been the case had plaintiff been dealing with a private

3. Same: accord and satisfaction.

corporation or individual.   *Collins v. Welsh,* 58 Iowa, 72; *Allen v. Cerro Gordo County,* 34 Iowa, 54; *Grimes v. Hamilton,* 37 Iowa, 290; *Mills County v. B. & M. R. R. Co.,* 47 Iowa, 66.   The city having become bound by the sewer contracts, as herein indicated, the plaintiff was entitled to judgment for the unpaid balance due on the contracts being the amount of the unpaid and unwaived certificates of special assessment in plaintiff's hands.   *Scofield & Cavin v. City of Council Bluffs,*

*supra; Ft. Dodge E. L. & P. Co. v. City of Ft. Dodge,* 115
Iowa, 573.

Appellee's contention that there was an adjudication
in the *Bennett* case that binds the plaintiff in this case
can not be sustained.   No question between the city and its
codefendants was raised or determined in
that case.   The holding there was simply
that the cost of the sewer could not be taxed
against the property of the plaintiffs in that case.   It is
doubtful even if such determination would be an adjudi-
cation in favor of other property owners against the en-
forcement of the special assessments.   It certainly could
not be conclusive in their favor, unless the facts were sub-
stantially alike, and even then it has been held that a judg-
ment for the property owner against the validity of an as-
sessment is not *in rem,* and therefore not conclusive in an-
other action against the city in which the validity of the
same assessment roll is involved.   *Trimmer v. City of
Rochester,* 130 N. Y. 401 (29 N. E. 746); *Tifft v. City
of Buffalo,* 164 N. Y. 605 (58 N. E. 1093).   As we have
already said, the fact that property may not be liable to a
special assessment does not necessarily determine the liabil-
ity of the city for a completed and retained improvement.
The very fact that the property is not so liable creates
liability on the part of the city; and, if the city is estopped
by its acts to plead *ultra vires* as to an executed contract, it
is clear that it can not claim that a judgment in favor of
the property owner is also a judgment in its favor.   The
authorities relied upon by the appellee do not announce such
a doctrine and are not determinative of the question.   Here,
the city joined with the other defendants in the *Bennett*
case in resisting the plaintiff's claim, and pleaded, among
other things, that a judgment sustaining Bennett's claim
would render it liable; hence there was no issue between
the city and its codefendants in that case that adjudicated
the present controversy.

4. JUDGMENTS:
former
adjudication.

Some other points are argued by both the appellant and the appellee, but, as the propositions already discussed reach and dispose of the substantial merits of the case, we need go no further.

For the reasons pointed out, the judgment of the district court is reversed, and the cause is remanded for a judgment in harmony with this opinion.

*Reversed* and *Remanded.*