307 P.2d 895

Marion BAIR, Plaintiff,

v.

**LAYTON CITY CORPORATION, a municipal corporation, Elias A. Dawson, James E. Biggs, Dean Morgan, Irvin W. Adams, Richard L. Stevenson, Jr., Richard Cook, John M. Park, North Davis County Sewer District, Ray J. Dawson, A. O. Stoker, Clarence J. Stoker, Albert Mitchell, Richard S. Stevenson, Jr., Ervin J. Wall, J. Alex Patterson, Lawrence E. Holt, Arthur Mitchell, Joseph Cook, Golden F. Layton and Vird Cook, Defendants.**

No. 8585.

Supreme Court of Utah.

Feb. 27, 1957.

George B. Handy, Ogden, for plaintiff.

William H. King, Clearfield, for defendants.

WADE, Justice.

Plaintiff, Marion Bair, a resident, property owner and taxpayer of the defendants Layton City and North Davis County Sewer District, commenced this original proceeding in this court seeking to enjoin such defendants from performing a contract entered into between them on November 29, 1955. Defendant Layton City is a third class city and one of eight cities in the north part of Davis County and one city in Weber County in the defendant North Davis County Sewer District. This District occupies the territory between the Wasatch Mountain Range on the east and the Great Salt Lake on the west and was organized as a Sewer Improvement District for the disposition and treatment of sewer disposal, under Title 17, Chapter 6, Utah Code Annotated 1953. The city and other cities and some government plants had sewer facilities prior to the organization of the District and the purpose of the District was to provide additional out fall lines and treatment plants to take care of the sewage from such cities and governmental plants.

Plaintiff's claim for injunctive relief is based on the following contentions: (1) The contract creates a debt of the City in excess of the taxes of the current year without submission to the qualified electors in violation of Article 14, section 3 of Utah's Constitution [1] and in excess of 12% of the value of the taxable property of the City in violation of Article 14, Section 4 of our Constitution.[2] (2) There is no consti-

1. Article 14, section 3, Constitution of Utah provides: "No debt in excess of the taxes for the current year shall be created * * * by any city * * * in this State; unless the proposition to create such debt, shall have been submitted to a vote of such qualified electors as shall have paid a property tax therein, in the year preceding such election, and a majority of those voting thereon shall have voted in favor of incurring such debt."

2. Article 14, section 4, Constitution of Utah provides: "When authorized to create indebtedness as provided in Section 3 of this Article, * * * No city, * * * shall become indebted to an amount, including existing indebtedness, exceeding four per centum of the value

tutional or statutory authority for the City to enter into such contract. (3) The contract is a lending of the City's credit to the District contrary to Article 6, Section 31 of our Constitution.[3] (4) The provisions of the contract are ambiguous and unreasonable and attempt to bind the City's governing body with respect to governmental matters contrary to the Constitution.

1. Whether this contract creates a debt of the city contrary to the constitutional debt limitation depends on the existing facts and circumstances, and the terms of the contract. So a short review of such facts and circumstances and the terms of the contract is in order.

Within the territorial boundaries of the district the United States maintains and operates the Clearfield Naval Supply Depot, Hill Air Force Base and Hill Air Force Base West Sector. Approximately 15,000 persons are employed in these plants and during the war there were many more employees. All of the territorial area of the

district is within the Weber Basin Water Conservancy District. The population of the district has about doubled from 1940 to 1950, when it had about 22,000 inhabitants and with the coming of adequate water supply it is anticipated that it will more than double that number by 1973.

Near the beginning of World War II the United States constructed several out fall sewer lines to provide sanitary facilities for the military plants and for nearby housing facilities. After the war in order to relieve the United States of operating such facilities the communities of Layton, Syracuse, Sunset, Clearfield, Roy, Clinton and Latona formed an unincorporated association known as the North Davis Metropolitan Sewer which entered into a lease and purchase agreement with the United States to acquire such facilities. Soon thereafter it became apparent that more sewer out fall lines and a sewage treatment plant were vitally needed. To provide these additional facilities and to provide legal machinery for the authorization, issuance and sale of

of the taxable property therein, * * * in incorporated cities the assessment shall be taken from the last assessment for city purposes; provided that no part of the indebtedness allowed in this section shall be incurred for other than strictly * * * city, * * * purposes; provided further, that any city of the first and second class when authorized as provided in Section three of this article, may be allowed to incur a larger indebtedness, * * * and any city of the third class, * * * not to exceed eight per centum

additional, for supplying such city or town with water, artificial lights or sewers, when the works for supplying such water, light and sewers, shall be owned and controlled by the municipality."

3. Article 6, section 31, Constitution of Utah, provides: "The Legislature shall not authorize the State, or any county, city, * * * to lend its credit or subscribe to stock or bonds in aid of any railroad, telegraph or other private individual or corporate enterprise or undertaking."

bonds to raise the necessary money to construct the additional facilities, the Davis County Board of County Commissioners adopted a resolution with the concurrence of the Weber County Board of County Commissioners creating the North Davis County Sewer District and immediately thereafter the Board of Trustees organized the district. That district is now working in harmony with the State Water Pollution Control Board in order to supply the sanitary requirements for the sewage out fall from this area which at present flows untreated into the Great Salt Lake.

The district now operates and contemplates the construction and operation of additional sewage disposal and treatment facilities. To that end an election has been held and the electorate of the district has authorized the district to issue $2,100,000 of general obligation bonds and $800,000 of revenue bonds. The city of Layton, as well as other cities within the district, now owns and operates a sewer system but lacks adequate facilities for the disposition and treatment of the sewage which is collected in the sewer systems and the city desires that the district shall construct and operate adequate facilities for the disposal and treatment of the sewage which is collected in the district.

On November 29, 1955, the city enacted an ordinance authorizing and directing the execution of such contract, which contract was duly entered into on that day. Under the contract the district agrees to proceed promptly with the construction of additional sewage disposal and treatment facilities and to use its existing facilities with the additional facilities, as soon as constructed, in the disposal and treatment of the sewage from the city. The city agrees to connect its sanitary sewage system to the disposal facilities of the district for disposal and treatment therein and to pay the district for such services for each calendar month from January, 1956, during the life of the contract in accordance with a schedule of rates for the various sewer connections on the city's sewer system at the end of such month. The city further agrees to supply the district on the 15th of each month with an itemized statement of the facts necessary to determine the amount due from the city to the district for the preceding month and to pay such amount on that day.

The contract also contains the following provisions:

"The district shall never have the right to demand payment of any obligation devolving on the city under this agreement from funds raised or to be raised by taxation, and all obligations so devolving on the city shall never be construed to be a debt of the city of such kind as to require the levy and collection of a tax to discharge such obli-

gation, it being expressly understood by the parties hereto that the district shall not have the right to require the city to make any payment due hereunder from any source other than moneys received by the city from the operation of its sanitary sewer system, and that all payments to be so made hereunder shall constitute operating expenses of such sanitary sewer system; provided, however, that nothing in this paragraph contained shall be so construed as to preclude the making of such payments by the city from any money or revenues which it may have on hand available for such purpose. The city agrees to impose such rates and charges for services supplied by its sanitary sewer system as will make possible the prompt payment of all expenses incurred in operating and maintaining such system, including the payments due hereunder, and the prompt payment of all obligations of the city payable from the revenues of such system.

"The city agrees that it will during the term of this agreement do all things necessary to the proper maintenance and operation of its sanitary sewer system, and that it will keep in force at all times during the term of this agreement an ordinance requiring all buildings and structures in said city used for residence, commercial or industrial purposes, and which are within reasonable distance of an established sewer collection main, to be connected to such main.

"4. This agreement shall take effect from and after its execution and shall continue in force for a period of fifty (50) years from such date or until all of the bonds of the district hereinabove described, and any bonds issued to refund such bonds, shall have been fully paid and retired, whichever termination date shall be later.

"5. The district is hereby granted the right to bring such suits and to institute such litigation against the city and its officials as may be necessary to require the full performance by the city of all the agreements herein contained and all duties devolving on it under the provisions hereof, which suits may, but without limitation, include suits for mandamus or injunction.

"6. In case by reason of force majeure either party hereto shall be rendered unable, wholly or in part, to carry out its obligations under this agreement, other than the obligation of the city to make the payments required under the terms hereof, then each such party shall give notice and full particulars of such force majeure in writing to the other party within a reasonable time after occurrence of the event or cause relied on, and the obligations of the party giving such notice, so far as

they are affected by such force majeure, shall be suspended during the continuance of the inability then claimed, but for no longer period, and such party shall endeavor to remove and overcome such inability with all reasonable dispatch. The term 'force majeure' as employed herein shall mean acts of God, strikes, lockouts, or other industrial disturbances, acts of the public enemy, orders of any kind of the government of the United States or the State of Utah, insurrections, riots, epidemics, landslides, lightning, earthquakes, fires, hurricanes, storms, floods, washouts, arrests, restraint of government and people, civil disturbances, explosions, breakage or accidents to machinery or collection lines, partial or complete inability of the city to discharge sewage into the disposal facilities or of the district to treat and dispose of such sewage on account of any other causes not reasonably within the control of the party claiming such inability."

The defendants conceded that if the total sum or aggregate of all the monthly payments which will probably become owing during the fifty years or more of the life of this contract constitutes a present debt or obligation of the city then the debt limitation provided in both sections 3 and 4 of Article 14 of our Constitution has been exceeded. On the other hand, it is clear that if the only debt which the city incurs under this contract is the obligation to make monthly payments for services rendered during the monthly period in taking the sewage from the city and in treating it, then the constitutional debt limitations of the city has not been exceeded.

Under this contract the city borrows no money and issues no bonds, nor does it acquire or construct or agree to acquire or construct any sewer or sewage treatment plant or other public improvement. It merely contracts to pay the district by the month for services which the district renders during each calendar month, as long as the district renders the services which it agrees to render, in accordance with the contract, throughout the life of the contract. The city also agrees to keep in effect during the life of the contract an ordinance requiring all buildings and structures in the city which are used for residence, commercial or industrial purposes within a reasonable distance of an established sewer collection main to be connected with such main and agrees to pay the district for its services in disposing of the city sewage in accordance with a rate schedule for the connections with the city's sanitary sewage system. The amount of the monthly payments which the city will owe the district under this contract depends entirely on the number and kind of sewer connections to the city's sew-

er system. There is an express provision that the contract shall continue in operation for 50 years and until the bonds of the district described in the contract as well as all bonds issued to refund such bonds shall be fully paid. The contract further provides that the district shall never have the right to demand any payment from the city under the contract from funds raised or to be raised by taxation or from any source other than from moneys received by the city as operating expenses from its sanitary sewer system and the city agrees to impose a charge for such operating expenses which will insure prompt payment of the monthly payments which shall become due and owing from the city to the district.

The effect of this contract is that the city is obliged to make monthly the payments to the district for the services which it has rendered during the preceding calendar month. If the district in violation of the contract fails to render such services, no monthly payment would be owing. And in any event the city has no obligation to make any such payment except from funds received by it as operating expenses of its sanitary sewer system, but it may be coerced into making the necessary charges for such services to provide funds to make the monthly payments promptly when due. While the contract does not expressly so state, it is clear from its provisions and especially from the provision limiting the city's liability to make the payments out of money received by the city from its sanitary sewer system as operating expenses and from no other source, that the city will not be liable to the district to make such monthly payments in case the district fails to furnish the services, which it agrees to furnish, under the terms of the contract.

The weight of authority, and the better reasoned cases, hold that a contract to furnish electricity, water, disposal of sewage or other service to a municipality over a long period of time to be paid for periodically as the service is furnished does not create a debt as that term is used in constitutional debt limitation provisions for the aggregate amount which may accrue or become owing during the life of the contract. This is especially true where the payments become owing and accrue only upon the rendition of the service, where there is no fixed amount of each payment but such amount varies in accordance with the quantum of service rendered, where the municipality cannot be coerced into making any such payment other than from collection for such service, and where the city has not already exceeded its debt limitation.

A leading case on this question is City of Walla Walla v. Walla Walla Water Co.,[4]

4. See City of Walla Walla v. Walla Walla Water Co., 1898, 172 U.S. 1, 19 S. Ct. 77, 85, 43 L.Ed. 341. To the same effect see note on this question in 103

where the Supreme Court of the United States said:

"But we think the weight of authority, as well as of reason, favors the more liberal construction that a municipal corporation may contract for a supply of water or gas or a like necessary, and may stipulate for the payment of an annual rental for the gas or water furnished each year, notwithstanding the aggregate of its rentals during the life of the contract may exceed the amount of the indebtedness limited by the charter. There is a distinction between a debt and a contract for a future indebtedness to be incurred, provided the contracting party perform the agreement out of which the debt may arise. There is also a distinction between the latter case and one where an absolute debt is created at once, as by the issue of railway bonds, or for the erection of a public improvement, though such debt be payable in the future by installments. In the one case the indebtedness is not created until the consideration has been furnished; in the other the debt is created at once, the time of payment being only postponed.

A.L.R. 1160–1177 where the cases on various phases of this question are discussed.

"In the case under consideration the annual rental did not become an indebtedness within the meaning of the charter until the water appropriate to that year had been furnished. If the company had failed to furnish it, the rental would not have been payable at all, and while the original contract provided for the creation of an indebtedness, it was only upon condition that the company performed its own obligation."

In Barnes v. Lehi City,[5] on this question we said:

"In Shields v. City of Loveland, supra [74 Colo. 27, 218 P. 913], the contract and the ordinance there in question required the city to pay $5,000 per annum for street lights for not less than 10 years. This the court held not to be a debt, but only a method of paying annually for street lights annually furnished. The general rule is that such contracts, being for services to be paid for periodically, are merely arrangements to pay for current expenses as they are incurred."

■■ The cases which hold to the contrary are usually based on the wording of the limitation provision or some special fact or circumstance in the case.[6] Such a con-

5. Barnes v. Lehi City, 1929, 74 Utah 321, 343, 279 P. 878, 886.

6. See note in 103 A.L.R. 1160, 1169, 1173, 1174.

tract does not create a present indebtedness of the aggregate amount which may accrue or become owing under the contract in ordinary business transactions, but the only indebtedness which is created is the amount which becomes owing upon the rendition of the service in accordance with the provisions of the contract. We have repeatedly "held with most jurisdictions that the terms 'debt' and 'indebtedness' as used in constitutional debt limitations of municipalities 'is given a meaning much less broad and comprehensive than it bears in general usage.' " [7] To reach the conclusion that this contract created a present indebtedness we would have to give to those terms as used in our constitutional provision a much broader meaning than they have in general usage. So we conclude that this contract does not create a debt of the city except upon the rendition of the service to the city in accordance with the terms of the contract and that if the city pays such debt in accordance with the terms of the contract, the debt limitation by the constitution will not be exceeded.

■ 2. There is constitutional and statutory authority for the city to enter into this contract. The general powers conferred on the city and its officers as a governing body clearly authorize the city to enter into this kind of a contract.[8]

■ 3. The contract does not lend the city's credit to the district contrary to Article 6, Section 31 of our Constitution. The payments under the contract commence for the month of January, 1956, but the sewage treatment does not begin until the facilities for such treatment are constructed. Plaintiff contends that this allows the district to construct the sewage treatment facilities on the credit of the city. There is no showing of how long it will take to construct these facilities or that this contract in respect to the payments to be made before such facilities are constructed is unreasonable in view of the surrounding facts and circumstances. We therefore hold that there is no lending of the city's credit shown by this contract.

■ 4. Under plaintiff's contention that the provisions of the contract are unconstitutional on account of ambiguity, unreasonableness, and an attempt to bind the municipal governing body's successors in office beyond the present term of office, the courts hold that municipal governing bodies have two classes of powers—governmental or legislative and proprietary or business. In the absence of express statutory provi-

7. See Barlow v. Clearfield City Corp., 1954, 1 Utah 2d 419, 426, 268 P.2d 682, 686; Barnes v. Lehi City, 74 Utah 321, 337–338, 279 P. 878, 884; Swanson v. City of Ottumwa, 118 Iowa 161, 170, 91 N.W. 1048, 1051, 59 L.R.A. 620.

8. See Article 11, Section 5, Subdivision (5) Constitution of Utah; sections 10–7–1, 10–8–2, 10–8–61, 10–8–38, U.C.A.1953, and Laws of Utah 1955, chapter 26, section 2.

sion, such governing bodies, in the exercise of governmental or legislative power cannot make a contract which is binding on the municipality after the end of such governing body's term of office. But in the exercise of its business or proprietary power such body may bind the municipality for as long a period of time as is reasonably necessary to accomplish a legal purpose.[9] Contracts involving water, electricity and gas supply and sewer systems and sewer disposal treatment and the like are generally held to be an exercise of the business or proprietary power and are binding on future governing bodies, the same as if made by individuals, for a reasonable period of time.[10]

■ McBean v. City of Fresno, supra,[11] an early California case involving a contract for the disposal and treatment of the city sewage outside of the city limits, is directly in point on the question here presented. In sustaining such contract the court said that if "it be made to appear that at the time the contract was entered into, it was fair and just and reasonable, and prompted by the necessities of the situation, or was in

its nature advantageous to the municipality, then such contract will not be construed as an unreasonable restraint upon the powers of succeeding boards." This, we believe, is a clear and correct statement of the law on this question and we believe, therefore, that this contract is not invalid in this respect. It is evident that a long term contract was necessary in order for the city to obtain adequate sewage treatment and disposal facilities with the least possible delay and expense, and to have such facilities constructed in accordance with a long term plan to take care of the city's needs for an unlimited period of time and to build in a manner so that the facilities can be expanded as the population of this area increases. Under these conditions no constitutional provision has been violated by this long term contract as an unreasonable restraint upon the powers of succeeding governing bodies of the city.

■ Plaintiff further argues that the contract provision that the city "will keep in force at all times during the term of this agreement an ordinance requiring all buildings and structures in said City, used for

9. City of Walla Walla v. Walla Walla Water Co., supra, note 4; First National Bank of Red Oak v. City of Emmetsburg, 1912, 157 Iowa 555, 138 N.W. 451, L.R.A. 1915A, 982; Ambrozich v. City of Eveleth, 1937, 200 Minn. 473, 274 N.W. 635, 112 A.L.R. 269; see annotation to this effect in 70 A.L.R. 794 and 795; 37 Am.Jur. 679–680, Municipal Corporations, sec. 66.

10. See note 9 above and especially First National Bank of Red Oak v. City of Emmetsburg, and McBean v. City of Fresno, 1896, 112 Cal. 159, 44 P. 358, 361, 31 L.R.A. 794, 53 Am.St.Rep. 191; which involve the building of a sewer system and a sewage disposal and treatment plant.

11. See note 10 above.

residence, commercial or industrial purposes, which are within reasonable distance of an established sewer collection main, to be connected with such main," is so vague and ambiguous that it is unenforceable. There might be a difference of opinion on whether some buildings are within a reasonable distance from a sewer main, and a reasonable distance from such main might be different under some circumstances than under others, but it seems clear that the city's governing body should have no difficulty in enacting an ordinance which would fix a reasonable distance from such main within which all the buildings and structures designated in the contract must be connected with such main. So we conclude and hold that this contract is not invalid on account of vagueness and ambiguity in this respect.

Plaintiff's petition for a writ is denied with costs to the defendants.

McDONOUGH, C. J., and CROCKETT, J., concur.

HENRIOD, J., does not participate herein.

WORTHEN, Justice (concurring in result).

I concur in the result reached by the majority opinion, not, however, on the ground that the agreement is valid, but because there have not been sufficient facts alleged to enable us to determine the validity of the same.

I am of the opinion that there are not sufficient facts alleged to determine whether or not the contract in question, together with other indebtedness of the city, exceeds the taxes for the current year in violation of the constitutional limitation of Section 3, Article XIV of the Utah Constitution. Nor am I sufficiently enlightened to determine whether the present earnings, if any, of the city owned sewer system are being used to help meet the contract liability.