F. M. HUBBELL, SON & COMPANY, Appellants, v. CITY OF DES MOINES et al., Appellees, and FREDERICK M. HUBBELL et al., Trustees, Appellants, v. CITY OF DES MOINES, Appellee.

**MUNICIPAL CORPORATIONS:** Street Improvement—Validity of
1 —Complying with Ordinance. In the construction of a street improvement, substantial compliance with the ordinance is sufficient.

> PRINCIPLE APPLIED: An ordinance required the council "to determine the time, not less than one year, during which the contractor shall be required to keep said improvement in good repair." The resolution of necessity proposed and adopted and the call for bids required a "guarantee that the same shall endure without need of repair for one year." The contract for the work "guarantees that the work and materials shall be of such character that the pavement shall endure without need of repairs during a period of one year, etc." A bond exacted faithful compliance with the terms of the contract. *Held,* ordinance substantially complied with.

**MUNICIPAL CORPORATIONS:** Street Improvements—Remedy for
2-3-4 Non-Jurisdictional Irregularities. A property owner, aggrieved by non-jurisdictional errors, irregularities and inequalities in

the construction of paving and sewers, has been provided an exclusive remedy. He must file his objections with the council, and avail himself of his right to appeal therefrom. (Sec. 824, Code.)

PRINCIPLE APPLIED: (1) Slight variations between the completed improvement and the established grade, (2) changes in grades after contract and before commencement of work, and (3) assessing in excess of the 25 per cent limitation, are all non-jurisdictional matters.

MUNICIPAL CORPORATIONS: Street Improvements—Contracts for—Extension—Validity. The time of performance of contracts for paving, sewers, etc., may be reasonably extended without invalidating the contract or the assessments made after completion of the work.

PRINCIPLE APPLIED: In instant case an extension from December 1st to May 1st following, *held* not unreasonable.

MUNICIPAL CORPORATIONS: Street Improvement—Permanency of—Evidence to Overthrow. Evidence that the earth along one side of a pavement had washed out did not, in instant case, warrant the conclusion that pavement of the kind laid was not permanent in character.

*Appeal from Polk District Court.*—HON. HUGH BRENNAN, Judge.

TUESDAY, JANUARY 19, 1915.

PETITION to enjoin the collection of certain special assessments was dismissed and plaintiffs appeal.—*Affirmed.*

*James A. Howe,* for appellants.

*H. W. Byers, R. O. Brennan, E. C. Carlson,* and *E. J. Kelly,* for appellees.

LADD, J.—I. Lots 58, 59 and 60 belong to F. M. Hubbell, Son & Company, and Lots 55, 56 and 57 to the trustees of the F. M. Hubbell estate. All are in Polk & Hubbell Park in the city of Des Moines and about 28th Street between Forest Drive and Terrace Road. Separate suits were brought by

the respective owners to enjoin the collection of special assessments levied against these lots and these subsequently were consolidated. These assessments were levied to pay for vitrified brick pavement with Portland cement concrete foundation laid in said street, in pursuance of the statutes of the state and ordinances of the city, save in the respects hereinafter considered, because of which it is alleged that (1) the assessments were void, and (2) fraudulent. The irregularities said to necessitate this conclusion may be considered separately.

II. Ordinance No. 1084 as amended required that the city council "shall also determine the time, not less than one year, during which the contractor shall be required to keep said street improvement in good repair." See Sec. 814 Code. It is argued that this was not complied with. The resolution of necessity proposed as well as that adopted and the publication of proposal for bids exacted that the contractor "guarantee that the same will endure without need of repair for one year from date of its acceptance by the city." But in the contract, the contractor "undertakes and guarantees that the material and workmanship employed in or upon the work shall be of such character that the pavement shall endure, without need of repairs, during a period of one year from and after the completion thereof; that in case any disintegration appears, or any defects occur within said period, except such as are without the fault of the contractor, caused by reason of excavations in the pavement, and except such defects as arise from causes not incident to the ordinary use of street pavements; then the contractor will, within ten days from the time of being notified of such defect, make the same good or will pay to the city of Des Moines the reasonable cost of remedying such defect. It being the intention that the party of the first part hereby guarantees that the improvement herein specified shall be and remain (except as to defects that may appear, or repairs which may be needed

1. MUNICIPAL CORPORATIONS: street improvement: validity of: complying with ordinance.

by reason of excavation or disturbances of the street not caused by said party of the first part, its agents, servants or employees) at the end of one year from the completion thereof in as good condition in all respects as when completed and as required by the contract and specifications embodied in said contract; and shall be and remain a good, substantial, reliable and durable pavement in material and workmanship as a whole and in all its parts except ordinary wear. Provided it shall be the duty of the first party, or his sureties, to notify the superintendent of the department of streets and public improvements, in writing, to inspect said improvement within thirty days prior to the expiration of said term of one year and until the said superintendent shall be so notified, the above obligation to maintain said improvement in good condition and repair shall continue and remain in force; provided, further, that nothing herein contained shall be construed to release said party of the first part or his sureties from liability through consequence of any wrongful, fraudulent or negligent act of said party of the first part, his agents, or employes, in the construction of said improvements which shall not have been disclosed at the expiration of one year above mentioned.''

The bond exacted the faithful performance of all the terms and conditions of the contract. It will be observed that while the ordinance exacts merely the keeping in repair, the preliminary resolutions and advertisements required a guarantee that the improvement shall continue without need of repair; and the contract not only exacts the keeping in repair but also that the material and workmanship shall be such that the improvement shall endure for the year without need of repair. Indeed, the guaranty as specified in the resolution of necessity necessarily involved both of these and therefore was broad enough to include the condition of the ordinance and was so construed by the parties in preparing the contract. The ordinance in exacting the condition quoted did not specifically or inferentially preclude requiring more and in ex-

acting the repairing of the improvement during the year, as well as the quality of material and workmanship specified, the city officials not only obeyed the ordinance but undertook to guard against any lapse on the part of the contractor affecting the character of the improvement when done. The ordinance was substantially complied with.

III. When the contract was let, the grade at Forest Drive was 153.3 feet above the datum plane and 42.44 feet above said plane at Terrace Road. By ordinance adopted May 24,

2. MUNICIPAL CORPORATIONS: street improvements: remedy for non-jurisdictional irregularities.

1912, the grade at Forest Drive was lowered to 146.79 feet and at Terrace Road raised to 42.8 feet above the datum plane. As we understand it, the last grade established was not a straight line between the points mentioned. The pavement as laid conformed with the last grade for some distance from Forest Drive and then slanted below until at the other end it was .8 of a foot lower. According to an engineer called by plaintiffs, the greatest difference between the grade lines was 3.6 feet and from this point toward Terrace Road grades differed .006 per cent. Appellants contend that this change of grade and variance from the last grade invalidated the contract. Such was not the effect of the variance; for this did not go to the power of the city to make the improvement, but merely to the manner of the doing so, and the exclusive remedy therefor was through objection before the city council and, in event of an adverse ruling, by appeal to the district court. *Shaver v. J. W. Turner Improvement Co.*, 155 Iowa 492. Nor do we think a change in the grade of the street between the time of entering into the contract to make the improvement and when performed a matter which

3. MUNICIPAL CORPORATIONS: street improvements: remedy for non-jurisdictional irregularities.

will invalidate the contract. In any event, the burden is on the city to excavate to grade and only the expense in removing the earth from the grade to the subgrade may be assessed against the abutting owners. The change then casts no additional burden on the lot owner and

certainly removes none from the contractor. It, if increasing the depth of the cut, may have interested him as an abutting lot owner or as a general taxpayer of the city, but these considerations do not enter into the cost of the special assessment, which was in no wise affected by the change of grade. In *Allen v. City of Davenport*, 107 Iowa 90, the grade of the street had not been established when resolution of necessity was approved and the proposal for bids was published, and the court with reference thereto said that "as neither the law nor the city charter makes the establishment of the grade a condition precedent to the passage of the resolution for the work, and as the purpose and intent of the law are to make such improvement permanent and not subject to change after it is once completed, without liability for damages by reason thereof, it is sufficient if the grade is established at such time as that the improvement may be made with reference thereto. In other words, an ordinance fixing the grade is not jurisdictional, and need not precede the resolution ordering the improvement. If passed so that the work is done with reference thereto, and so that the owner may not be subjected to damages by reason of a subsequent change without compensation therefor, it is sufficient."

As a change of grades was not involved, no opinion was expressed as to that. In the absence of any damage resulting therefrom the same rule would be applicable. What was said in a similar case by the supreme court of Kansas is pertinent:

"Every property owner who might have protested, and did not do so, knew that it would be the duty of the council to establish the grade for the pavement, and that the performance of this duty involved the exercise of discretion and judgment. This was one of the steps necessary to be taken in making the improvement mentioned in the resolution. If the first attempt to establish a proper grade were unsuccessful, it became the duty of the council to correct the mistake. . . . The council proceeded by resolution. Prop-

erty owners were duly notified that the council intended to pave, curb and gutter the avenue. No grade had thus been established. The grade, whether as first designed, or as subsequently fixed, did not affect the cost of the improvement mentioned in the resolution. As general taxpayers of the city, the abutting property owners might be interested in the increased cost of the grade work of which they complain. As abutting property owners, they might be interested in the increased height of the grade because of the injurious effect upon the adjacent lots, but none of these considerations enter into the special assessment which they seek to enjoin in this action. If the council, by increasing the grade, acted without jurisdiction, these plaintiffs knew of it at the time, and should then have taken steps to prevent the wrong instead of remaining silent while the special improvement, which they knew would be a charge against their property, was being constructed. This special tax was levied to pay for just what the council, by its resolution, acquired jurisdiction to do.'' *Barnes v. City of Parsons,* 94 Pac. (Kan.) 151.

The entire matter relates not to the power of the city council in making the improvement but to the exercise of that power—the manner of accomplishing that which the legislature had authorized that body to do—and therefore was not jurisdictional. This was pointed out in *Shaver v. Turner Improvement Co.,* 155 Iowa 492, and plainly is one of those matters to which objection must be interposed if at all before the city council, and if not there made is to be deemed waived. As observed in *Cheny v. City of Ft. Dodge,* 157 Iowa 250, the purpose of the statutory provisions is ''to relegate the property owner to his remedy by objection and appeal in all cases where the city council has not exceeded its jurisdiction; and the holding of the Shaver case just cited is, in effect, that in the case of a mere departure from the plans and specifications, not substantially changing the nature of the improvement, the council does not lose jurisdiction to make assessment for the

improvement as constructed but may, on objections, grant the property owner such relief as he should have, and that on appeal the district court may review the action of the council and grant the relief which should have been granted by it.''

Such remedy is exclusive and the objection was not available to plaintiffs in this suit.

4. MUNICIPAL CORPORATIONS: street improvements: remedy for non-jurisdictional irregularities.
IV. The objection that the assessments exceeded 25 per cent of the value of the abutting property on which levies were made should have been made before the city council and not having been there submitted is deemed to have been waived. *Durst v. City of Des Moines,* 150 Iowa 370.

V. The contract was entered into October 13, 1911, and stipulated that ''the said work shall be commenced on or before the 20th day of October, 1911, and regularly and diligently prosecuted thereafter, and fully completed on or before the 1st day of December, 1911, unless otherwise provided in writing signed by the Mayor and approved by the Council of the City of Des Moines. . . .

5. MUNICIPAL CORPORATIONS: street improvements: contracts for: extension: validity.

''If the said party of the first part shall fail to complete said work by the dates specified herein, an amount equal to the sum of Three ($3.00) Dollars per day, as liquidated damages for breach of this contract shall be payable to the City of Des Moines for each day of delay thereafter until final completion of said work, and shall be deducted from the amount herein stipulated to be paid to the said party of the first part upon final settlement.''

The work had not been commenced at the time it was to have been completed, and on this ground it is contended that the assessments were void. The city council by resolution extended the time of performance until May 1st following and to this the contractor's bondsman consented. The manner of extending time in so far as the city is concerned was directory.

Not only did the contract omit any condition making time of its essence but, in prescribing a per diem penalty for delay and the conditions on which the time of performance might be extended, it clearly indicated that completion after the day fixed therefor was contemplated as a possibility. No statute or ordinance exacted that a specific period be fixed in the agreement within which to be performed or that this be done before a day named. The only conditions with respect to time are to be found in the contract and as these contemplated that an extension might be necessary, it ought not to be said that such extension, if not beyond a reasonable limit within which the improvement, in view of the circumstances, should be completed, will invalidate the contract and obviate liability for the assessments. *Heman v. Gilliam,* 171 Mo. 258, 71 S. W. 163; *Schibel v. Merrill,* 185 Mo. 534; *City of Sedalia v. Smith,* 104 S. W. 15; *Jenkins v. Stetler,* 118 Ind. 275, 20 N. E. 788; *City of Leavenworth v. Mills,* 6 Kans. 288; 1 *Page & Jones on Assessments,* 538.

The only available ground of objection to an abutting property owner where the conditions are as in the contract in suit is that the performance has not been within a reasonable time, and we are not ready to say, in view of weather conditions of this climate, and without any showing, that the improvement was not completed within a reasonable time.

6. MUNICIPAL CORPORATIONS: street improvement: permanency of: evidence to overthrow.

Evidence that the earth along one side of the pavement had washed out did not warrant the conclusion that pavement of the kind laid was not permanent in character.

There was no evidence whatever of fraud. The decree dismissing the petition is—*Affirmed.*

WEAVER, EVANS and PRESTON, JJ., concur.