A. J. BENSHOOF, Appellee, v. CITY OF IOWA FALLS, Appellant.

**MUNICIPAL CORPORATIONS:** Public Improvements—Amend-
1, 4 ments to Law—Applicability—Constitutional Law. An amendment to a law governing the making of special assessments for public improvements will not be construed as applicable to proceedings already begun under the old law, and under which proceedings, rights have become fixed, when such construction would nullify the amendment by working a deprivation of the jurisdictional rights of the property owner, or by impairing the

contract rights already existing. It follows that such pending proceedings should be continued pursuant to the terms of the original law. So *held* as to an amendment authorizing assessments on *adjacent* property, in addition to *abutting* property, as provided in the original law. (Sec. 792-g, Code Sup., 1913.)

Evans, C. J., and Salinger, J., dissent.

**STATUTES:  Repeal—Effect—Municipal Improvements.** The repeal of a statute does not affect any right which has accrued, any duty imposed, or any proceeding commenced under or by virtue of the statute repealed. So *held* on the question whether paving proceedings already begun under a law authorizing assessments on *abutting* property were affected by a subsequent law requiring assessments on both *abutting* and *adjacent* property. (Sec. 48, Par. 1, Code, 1897.)

**STATUTES:  Construction—Prospective and Retroactive Construction.** Statutes will be given a prospective, instead of retroactive, effect, in the absence of a clear intent to the contrary. So *held* on the question whether paving proceedings already begun under a law authorizing assessments on *abutting* property were affected by a subsequent law requiring assessments on both abutting and adjacent property. (Sec. 792-g, Code Sup., 1913.)

**MUNICIPAL CORPORATIONS:  Public Improvements—Amendments To Law—Applicability—Constitutional Law.**

**MUNICIPAL CORPORATIONS:  Special Assessments—Inequitableness—Objections—Sufficiency.** An objection filed with a city council, charging that a proposed assessment is "inequitable" and was made under the "front-foot" rule, is sufficient to put in issue the question whether the assessment is equitable and in proportion to benefits, rather than in proportion to frontage.

**MUNICIPAL CORPORATIONS:  Special Assessments—Benefits— Front-Foot Rule—Depth of Lot.** The *depth* of property, as well as frontage, is a consideration which should not be overlooked in arriving at an assessment of benefits. An assessment manifestly based on the "front-foot" rule, and in total disregard of the depth, is, in present case, held to be inequitable.

*Appeal from Hardin District Court.*—R. M. Wright, Judge.

Friday, March 17, 1916.

In the district court, this was an appeal by the plaintiff from certain special assessments made against his property by the city council of Iowa Falls. The issue was made in

the form of objections by plaintiff, filed with the city council, as provided by statute. These objections were overruled by the city council, and the proposed assessments were levied. On the trial of the appeal in the district court, the objections were sustained, and a decree was entered, setting aside the assessments and ordering a reassessment. From such 'decree, the city of Iowa Falls has appealed. *Affirmed in part; Reversed in part,* and *Remanded.*

*Boyd Bryson* and *Maurice O'Connor,* for appellant.

*E. P. Andrews,* for appellee.

DEEMER, J.—I. The primary question in this case is whether the purposed special assessments involved herein should be made under the provisions of Chapter 76 of the

1. MUNICIPAL
CORPORATIONS:
public improve-
ments: amend-
ments to law:
applicability:
constitutional
law.

Laws of the Thirty-fifth General Assembly, or whether the assessments should be made under the previous law, in force when the street improvement proceedings were begun. The city council made the assessments under

the previous provisions of the law. The plaintiff contended for the application of the new statute. This view was adopted by the district court. The new statute is as follows:

"SEC. 1. Whenever, after January 1, 1914, any city or town council, including the councils of cities acting under special charter, levies any special assessment for street improvement as provided by Section 792 of the Code and amendments thereto and supplementary thereof, the same shall be made in accordance with the provisions of Section 792-a of the Supplement to the Code, 1907, and shall be limited to the amount to be assessed against private property, against all lots and parcels of land according to area so as to include one half of the privately owned property between the street improved and the next street whether such privately owned property abut upon said street or not but in no case shall privately owned property situated more than 300 feet

from the street so improved be so assessed.  In case of improvement upon an alley, such assessment shall be confined according to area to privately owned property within the block or blocks improved and if not platted into blocks for not more than 150 feet from such improved alley.

"SEC. 2.    All acts and parts of acts in conflict herewith are hereby repealed."

The assessment in this case was for street paving, the proceedings having been begun by the passage of a resolution of necessity by the city council of defendant city, on February 14, 1913.  Notice was ordered, and, on the same day, the city engineer directed to prepare plans and specifications on the same day, and on March 26, 1913, the street improvement was ordered.  On April 11, 1913, the plans and specifications prepared and prescribed by the city engineer were approved, and on the same day, the city clerk was directed to advertise for bids. On May 12, 1913, the bid of the Kaw Paving Company was accepted, and the contract awarded to it; and on the 15th of the same month, a formal contract was entered into between the city and the paving company.  This contract was also secured by a bond, signed by proper sureties.  By the terms of the contract, time was made the essence thereof, and the work was to be completed to the satisfaction of the city on or before November 1, 1913, the paving company agreeing to pay as liquidated damages the sum of $50 per day for each and every day the work remained uncompleted and unfinished after that date.  Delays incident to strikes or other causes beyond the control of the paving company were excepted.  A modification of the contract was made on September 16, 1913; and on November 3, 1913, the paving company asked an extension of time for completing the paving, the reason therefor not appearing in the record.  On December 2d, the council granted the paving company an extension from November 1, 1913, to July 1, 1914, provided the bondsmen consented thereto.  The sureties consented to this extension on Jan-

uary 19, 1914. The contract covered something like 18½ blocks of paving, and substantially all of it was completed in the year 1913; but two blocks were paved in the year 1914, and this was due to an extension of time asked for by the contractors. On June 4, 1914, the work was finally accepted by the city council, and the engineer was directed to prepare and file a plat and schedule for assessment purposes.

On July 6th, the council passed a resolution making a levy for the improvement, and also passed a resolution authorizing the issuance of city improvement bonds. It also, at the same meeting, directed the city clerk to give notice of the assessments. Notice was given of a hearing on July 31st, and on July 28th, plaintiff herein filed his objections to the proposed assessment against his property. These objections were overruled, and the assessment confirmed. Plaintiff appealed to the district court, and upon that appeal, the assessment was set aside, because not made under the provisions of Chapter 76, Acts of the Thirty-fifth General Assembly, and the court ordered the council to make a new assessment, after giving the proper notice to all parties in interest, under the provisions of the last mentioned act. The appeal is from this last order and decree. In all the resolutions, notices and proceedings, it was stated that the expense of the improvement was to be assessed against the property abutting on the streets improved. The contract with the paving company also provided that it was to accept assessment certificates against abutting property, levied according to benefits, and the assessments were made by the council against abutting property. The trial court was of opinion that the assessment should have been made under Chapter 76, Acts of the Thirty-fifth General Assembly, and this raises the principal issue in the case. This latter act was approved April 19, 1913, but did not go into effect until July 4th of that year, for it had no publication clause; and it will be noticed that the contract for the paving was let and the rights of the parties became fixed not later than May 15, 1913. The work was to have been

completed by November 1, 1913, and it was not done at that time, because of some fault on the part of the contractor, and time was extended by the council at the request of the contractor. Substantially all the pavement was laid prior to January 1, 1914, and practically all the grading and all the curbing was done in the year 1913. It will be observed that the new act provides that assessments shall be levied upon adjacent as well as abutting property, and appellee contends that the trial court was correct in holding that the city council should have made its levy under the new law instead of under the old, which limited assessments to abutting property. As the statutes of this state require notice of the resolution of necessity in order that property owners may object to the improvement or to the character thereof, or to the material of which it is to be constructed, and are entitled to a hearing thereon, this notice is said to be jurisdictional; and if not given, the whole proceedings are invalid and void. *Roche v. City of Dubuque,* 42 Iowa 250; *Bush v. City of Dubuque,* 69 Iowa 233; *Bennett v. City of Emmetsburg,* 138 Iowa 67; *Dunker v. City of Des Moines,* 156 Iowa 292; *Gilcrest v. City of Des Moines,* 157 Iowa 525; *Gallaher v. Garland,* 126 Iowa 206; *Reed v. Cedar Rapids,* 137 Iowa 107; *Shaver v. Turner Improvement Co.,* 155 Iowa 492; *Comstock v. City of Eagle Grove,* 133 Iowa 589; *Hubbell v. Des Moines,* 168 Iowa 418. This much is said to indicate that this court has always held that notice of hearing of the resolution to pave is necessary to obtain jurisdiction. It is true that it has not been held necessary in a constitutional sense, provided, at some stage of the proceedings, and before the assessment is in fact made, the property owner has notice and is given an opportunity to object; but it is true that, under our previous holdings, such notice of the proposed resolution has been held necessary to the validity of the proceedings, and if not given, they are entirely void. Under this rule, there was no authority whatever, prior to the passage of the act of the thirty-fifth general assembly, to levy assessments for paving, curbing or guttering against

adjacent property. Certainly, no authority in any case to do so arises unless all the notices and proceedings so state. The reason for this is that every property owner whose property it is proposed to assess is entitled to a notice and an opportunity to be heard upon the question as to whether the improvement shall be made at all, and if made, the nature and character of the material to be used, and perhaps other matters not necessary to be enumerated. It may be that the legislature might, if it saw fit, by specific legislation legalize assessments levied against adjacent property, provided that, at some stage of the proceedings, notice and an opportunity to be heard is given, although no notice of the resolution was given; but it is clear that the legislature could not in any way, by curative or healing acts, destroy vested rights or change the obligation of contracts. In this case, the contract was let and the improvement entered upon before Chapter 76 of the Acts of the Thirty-fifth General Assembly went into effect; and by the terms of that contract the city undertook to levy assessments against abutting property only, and to deliver certificates of these assessments to the contractors in payment of the expense of the improvement. Doubtless an abutting property owner cannot urge the unconstitutionality of the act on this ground, because he is not affected thereby; but in arriving at the legislative intent in the passage of the new act, it is quite important to consider whether a given construction would render it invalid as to anyone, because it destroys vested rights or interferes with the obligation of contracts; for it is not to be presumed that the legislature intended to pass any act which was and is unconstitutional, provided a different intent may be inferred.

It will be noticed that the legislature did not intend the new act to have immediate and present operation. By the express terms of the statute, its operation was postponed until January 1, 1914, and the repealing clause certainly did not go into effect until the affirmative part of the act became operative. The act is not, in form or substance, a curative one, nor

one apparently to give new powers to city councils in matters of paving improvements already under way. The undoubted purpose of the legislature was to postpone its operation until all street improvements then under way might be disposed of under the laws under which they were instituted, and not to give additional powers of assessment against property not within the district at the time the proceedings were instituted and the districts formed. We say this because it is well known that, in this climate, paving, curbing and guttering operations are concluded before the winter season begins, and it must have been the thought of the legislature that all street improvements of the kind in question begun in the year 1913 would be out of the way and assessments duly levied by January 1, 1914. Had the contractor complied with his agreement and, not for some purpose of his own, asked for an extension of time to complete a very small part of the job, the assessment in this case would have been completed long before January 1, 1914, and the assessment would have been under the old law. It cannot be possible that the legislature intended one kind of assessment if the contractor did his duty and complied with his contract, and another and still different kind if perchance he could induce the city council to grant him extra time to complete a small part of the work which he had obligated himself to perform within a stated period. Surely this was not the legislative thought.

But it is argued that, if the expense of the improvement is not assessed under the new law against both abutting and adjacent property, there can be no assessment at all; for the new law repeals the old, and there is no law under which any assessment may be made. This argument is specious rather than sound. Courts quite generally hold that, if the contract has been let and the improvement commenced before a change in the law, and the work be suspended until after a change in the law and not completed until some time thereafter, the assessment is to be levied under the old law. *Kirwan*

2. STATUTES: repeal: effect: municipal improvements.

*v. Fisher,* 4 Mo. App. 574, 575; *City of Dallas v. Ellison,* (Tex.) 30 S. W. 1128; *Jones v. Board,* 104 Mass. 461; *Hoertz v. Jefferson, etc., Draining Co.,* (Ky.) 84 S. W. 1141; *Houston v. McKenna,* 22 Cal. 550; *City of Cincinnati v. Seasongood,* (Ohio) 21 N. E. 630; *Marion & M. Gravel Road Co. v. Mc-Clure,* 66 Ind. 468; *Merchants Nat. Bank v. Escondido Irrigation Dist.,* (Cal.) 77 Pac. 937; *Firth v. Broadhead,* 7 Mo. App. 563; *Goodale v. Fennell,* 27 Ohio St. 426 (22 Am. Rep. 321); *Anderson v. Cortelyou,* (N. J.) 68 Atl. 118; *Haines v. Board,* (N. J.) 62 Atl. 186; *Fanning v. Schammel,* (Calif.) 9 Pac. 427. Moreover, our general statutes provide that "the repeal of a statute does . . . not affect any right which has accrued, any duty imposed . . . or any proceeding commenced, under or by virtue of the statute repealed." Sec. 48, Par. 1, Code, 1897. Of course, there may be changes in remedies and in procedure so as to affect pending proceedings; but subsequent changes cannot be made which will add to the assessment district, destroy the obligation of contracts, or increase the burden of property owners. These propositions are too fundamental to need the citation of additional authorities.

Assuming that the legislature might, after the proceedings had gone so far as to fix the district, let the contracts and commence the work, change the method of assessment so as to authorize a levy on property outside the district and make adjacent property liable, although it was not so before, the intent on its part to do so must clearly appear. *Jones v. Board, supra; In re Sackett,* 74 N. Y. 95; *Taylor v. Strayer,* (Ind.) 78 N. E. 236; *Wardens & Vestry of Christ Church v. City of Burlington,* 39 Iowa 224; *Leavenworth v. Miller,* 6 Kans. 288; *Tappan v. Board,* (Mass.) 79 N. E. 796; *Starr v. City of Burlington,* 45 Iowa 87; *Yaggy v. Chicago,* (Ill.) 62 N. E. 316. And in the absence of such intent, the statute will be given a prospective instead of a retroactive effect. This is the general rule in the construction of all statutes.

3. STATUTES: construction: prospective and retroactive construction.

We are clearly of opinion that the statute in question is
not a curative one; that the legislature did. not intend it to
apply to proceedings already progressed to the stage of the
ones here involved; and that it had in mind

**4. MUNICIPAL CORPORATIONS: public improvements: amendments to law: applicability: constitutional law.** assessments in such cases under the old law.
Any other holding would render the law
unconstitutional in so far as it affects the
contract between the city and the contractor,
and would render property liable which had
not been included within the assessment district and could
not have been held subject to assessment by the city or the con-
tractor at the time the contract was let. It is said, however,
that, as adjacent property owners are entitled to notice and an
opportunity to be heard before any assessments are made, and
as the trial court in its decree ordered notice given then as by
law prescribed, they have no right to complain; because they
may, under Secs. 823, Code Supp., 1913, and 824 of the Code,
1897, have their day in court and be heard upon their objec-
tions. It is well to ask in this connection what objections are
preserved to them by the statute. Surely they will have the
same rights as anyone whose property it is proposed to
assess. If this be true, then they have the right to challenge
any assessment which may be proposed against their prop-
erty, because no notice was given them of the proposed reso-
lution of necessity, and they never had an opportunity to be
heard thereon; and under all our decisions such an objection
would be valid, for the reason that this preliminary notice
is jurisdictional, and without it, the proceedings are invalid
and of no effect. That it was the intent of the legislature to
deprive a property owner of this right in the enactment of
the statute in question can hardly be conceived. The ultimate
effect of it would be to reduce the assessment against those
whose property was liable when the contract was let and the
improvement begun; to compel the city to raise the deficiency
by a general or special levy against all the property of the
city; to compel the contractor to accept certificates for smaller

amounts than the city has obligated itself to deliver, and to resort to a law suit or to a special or general levy voluntarily imposed by the city council. Surely no such result was intended, and there is no principle of law which requires any such holding. *Ross v. Board of Supervisors*, 128 Iowa 427, relied upon by appellee, is not in point, as an examination will show. In that case, the statute, before its amendment, provided for notice of the institution of the proceedings, to the owner of the land intersected by or abutting on the drainage ditch. Code Section 1940. The act was held invalid and of no force; at it was proposed to spread the tax upon all other lands in the vicinity without notice to those outside the district. The legislature then passed an act providing for notice to those outside the district whose lands it was proposed to tax, and this statute was held to validate subsequent proceedings against them. They were allowed, however, to file any and all objections, and the board of supervisors was expressly authorized to annul, diminish or increase the assessments. This act was expressly made applicable to all proceedings then pending before the board of supervisors for the location and construction of drains and ditches. The law was expressly made retroactive, and we said it was not unconstitutional when so applied. The decision was also grounded upon the proposition that, on the hearing provided for those whose lands were not abutting on or intersected by the ditch, the board of supervisors might entirely annul the tax, and that the landowner had the right to show cause, if any he had, why his land should not have been included in the drainage district. No such provisions are in the law now before us. And if appellee's contention be correct, notice being given to adjacent property owners, their property is to be assessed for a proportionate amount of the expense, no matter what their showing. Either this, or they may entirely defeat the tax because no preliminary notice was given them, as required by the statute in force when the proceedings were instituted. If the latter course be chosen, then the new statute is useless, except

to relieve abutting property of burdens and cast them upon the general public. This surely was not intended. There is no reason why the assessment should not be made under the old law, and upon that question, appellee is entitled to a hearing before the district court and to have this assessment reviewed with reference to the proper amount of levy against his property.

II. One other question is presented: Was the assessment laid against the property of the plaintiff equitable and according to benefits? This question is pressed upon us by the plaintiff in the event that our holding should be adverse to him on the first question considered. The defendant city contends, however, that this question was not made by the objections filed before the city council, and that the same for that reason cannot be considered.

5. MUNICIPAL CORPORATIONS: special assessments: inequitableness: objections: sufficiency.

It is undoubtedly correct that the emphasis of plaintiff's objection before the city council bore upon the plan of assessment which has already been discussed. He did, however, add a paragraph in addition thereto, wherein he charged the proposed assessment against him to be "inequitable" and that it was made under the "front-foot rule." While the objection is not very specific, we think it is sufficient to put in issue the question whether it was equitable and whether it was in proportion to benefits rather than in proportion to frontage. It appears from the evidence that the plaintiff's property was unimproved, except that an old blacksmith shop was situated thereon. It had a lateral frontage on Oak Street (the paved street) of 132 feet, and it had a depth, extending east, of 22 feet. It was of the value of $3,000. The assessment levied was $438. Across Washington Street and facing south on Washington Street opposite plaintiff's property was the Farrington property. This abutted also upon Oak Street, with a lateral frontage of 132 feet extending north. This property had a depth extending east of 44 feet. The real estate

6. MUNICIPAL CORPORATIONS: special assessments: benefits: front-foot rule: depth of lot.

without improvement was of the value of $5,000 or $6,000. The improvement upon it was of the value of $8,000. The assessment upon that property was $422. Across Oak Street to the west from plaintiff's property was the Ellsworth property. It had the same lateral frontage upon Oak Street as that of plaintiff. It had a depth extending west of 66 feet. The real estate without improvements was more valuable per square foot than was the property of plaintiff. This property was assessed at $411. With two or three exceptions, the plaintiff's property seems to have carried the highest assessment of any property abutting upon the improvement. There is no accounting in this record for these discrepancies, except to assume that the front-foot rule was adopted as the real basis of judgment. Manifestly, the plaintiff's property was assessed at the same figure at which it would have been assessed if it had been 44 or 66 feet deep.

We would not lay great stress upon the fact that the two neighboring properties, which we have herein specified, were actually improved and that that of the plaintiff was not. We think the mere fact of improvement, or the failure to improve, is not the controlling question. Otherwise, one might be heavily assessed because he had constructed his improvements, and another might escape because he had deferred the construction of improvements upon his property until the paving assessments were fixed. We think, however, that suitability for the purpose of present improvement is always an appropriate consideration. And it may be conceded in this case that plaintiff's property was suitable for substantial and valuable present improvements, although it was on the outside limit of the business district of the town. We are clear also that, where property abuts upon an improved street and is thereby rendered assessable for the improvement, the depth to which such property extends is a consideration which ought not to be overlooked. It is a factor in the area of the property, and such area necessarily affects the benefit to be acquired from the street improvement by the abutting property. That

does not mean that benefits are to be assessed according to the square foot. This would be objectionable for the same reason that the front-foot rule is objectionable. But the consideration of frontage is important, and the consideration of depth is likewise important. It is apparent from this record that the question of depth of plaintiff's property was wholly ignored in this assessment. Because of the conclusion of the trial court upon the first question here considered, no occasion was presented for dealing with this question. It was therefore ignored in the decree. We are unable to say from this record what assessment ought to be made against this property. The original plat and schedule are not before us, and certain exhibits which are referred to in the testimony have not been abstracted. We deem it appropriate, therefore, upon a reversal hereon, that the case be remanded to the trial court, with directions to make such assessment as should have been made under the previous statute, with power to the trial court to reopen the case for further evidence, if it be so advised.

In so far, therefore, as the trial court held the assessment to be governed by the new statute, its order is reversed; in so far as it set the assessment aside, the order will be affirmed, on the ground that the assessment is not proportioned according to benefits.—*Affirmed* in part and *Reversed* in part and *Remanded.*

LADD, GAYNOR and PRESTON, JJ., concur.

EVANS, C. J., and SALINGER, J., dissent as to Division I of opinion.

WEAVER, J., takes no part.

EVANS, C. J. (Dissenting in part.)—I am unable to concur in the majority view as expressed in the first division of the opinion. The general contention of the appellee plaintiff is that the power of assessment conferred upon the municipal corporation is legislative wholly; that the power thus confer-

red by the legislature may by the same authority be changed
or withdrawn at any time; that the municipal corporation
itself has no vested rights in the revenue method provided
for it; that the taxpayer has no vested right in such methods,
provided only that his property shall not be taken or assessed
without due process of law, including due notice at some stage
of the proceedings before the assessment is laid against his
property. This was the holding of the trial court.

Conceding that the question at this point is close and
difficult of solution, I think that the holding of the trial
court should be sustained.

As to the cases cited in support of the majority view, none
of the holdings contravened express provisions of the statute.
In the Ohio case cited, a constitutional provision was involved
which forbade retroactive legislation. The new statute under
consideration herein provides in express terms that it shall
apply to "any special assessment for street improvement" to
be levied "after January 1, 1914." The majority holding,
therefore, necessarily contravenes this express provision of
the statute.

We have no constitutional provision forbidding retro-
active legislation. True, we will not construe a statute as
being retroactive unless its express terms require it. If its
express terms do require it, it is beyond our power to ignore
it. If such a construction, however, would render the statute
unconstitutional, we might then give it construction which
would save its validity.

If it be correct, then, that no jurisdiction could be
acquired over non-abutting property at this stage of the pro-
ceedings, such fact might be a sufficient reason for denying
the application of the new statute to the pending proceed-
ings. The notice provided for by Section 810, Code Supp.,
1913, is jurisdictional in the sense that, as a *statutory* require-
ment, it was a limitation upon the power of the municipality.
A notice at that particular stage of the proceedings was not
required by reason of any *constitutional* provision. It was

necessary, in obedience to the Constitution, to provide for notice to the property owners, at some stage of the proceedings, before the assessment should be levied. Section 823, Code Supp., 1907, makes provision for such a notice which answers every requirement of the Constitution. It was within the power of the *legislature*, therefore, to dispense with the preliminary notice required by Section 810; and such is the effect of the new statute, if it be deemed applicable to the pending proceedings.

Section 823 is as follows:

''After filing the plat and schedule, the council shall give notice by two publications in each of two newspapers published in the city, if there be that number, otherwise in one, and by handbills posted in conspicuous places along the line of such street improvement or sewer, that said plat and schedule are on file in the office of the clerk, and that within twenty days after the first publication all objections thereto, or to the prior proceedings, on account of errors, irregularities or inequalities, must be made in writing and filed with the clerk; and the council, having heard such objections and made the necessary corrections, shall then make the special assessments as shown in said plat and schedule, as corrected and approved.''

The case of *Ross v. Board of Supervisors*, 128 Iowa 427, is quite in point here. That case involved a drainage proceeding. All the preliminary proceedings, including the construction of the drain, had been had under a statute later held to be unconstitutional. The legislature passed a new statute providing for special assessments; and special assessments were levied thereunder for this improvement against persons who had no notice of the preliminary proceedings but did have notice of the proposed special assessment. We quote from the opinion as follows:

''The appellant takes the position that the landowner is entitled to notice and hearing as to the extent of this district, and whether his land shall be included therein and that the

failure to provide for such notice and hearing renders the statute unconstitutional. In our opinion the objection is unsound. The division of a state or lesser municipal territory into districts for the purposes of taxation or public improvement is a legislative matter, and the citizens affected thereby cannot complain because the power is exercised without notice to him. . . . 'It is settled that if provision is made for notice to and hearing of each proprietor at some stage of the proceedings upon the question of what proportion of the tax shall be assessed upon his land, there is no taking of property without due process of law.' In the case before us, there is, under the statute, as amended, ample provision for a notice to every landowner, and opportunity given for the hearing of all objections he may have to assert against the validity and justice of the proposed charge upon his property. This, under the law, is all he can rightfully ask."

A similar question was involved in *Arnold v. City of Fort Dodge,* 111 Iowa 152. The plaintiff in that case had no preliminary notice that the cost of guttering and curbing would be assessed against her property. She did, however, receive the notice provided for by Section 823. We said in that case:

"She then had notice and opportunity to be heard before the assessment attached and became a lien upon her property, and this is all the law requires."

The following from the Supreme Court of the United States bears upon the same question:

"The legislature, in the exercise of its power of taxation, has the right to direct the whole or a part of the expense of a public improvement, such as the laying out, grading or repairing of a street, to be assessed upon the owners of lands benefited thereby; and the determination of the territorial district which should be taxed for a local improvement is within the province of legislative discretion. . . . If the legislature provides for notice to and hearing of each proprietor, at some stage of the proceedings, upon the question what propor-

tion of the tax shall be assessed upon his land, there is no taking of his property without due process of law." *Spencer v. Merchant,* 125 U. S. 345.

Section 2 of the new statute purports to repeal all acts or parts of acts that are inconsistent therewith. It would seem, therefore, that by the express terms of this enactment the requirement of preliminary notice, as provided in Section 810, was dispensed with, so far as new parties were affected by the new legislation. Inasmuch as the notice provided for by Section 823 meets all constitutional requirements, the legislature had constitutional power to dispense with the preliminary notice provided for by Section 810. If it did dispense with such notice as to new parties, the jurisdiction of the municipality is as broad as the legislative permission.

I concur in Division II of the majority opinion.

SALINGER, J., joins in the foregoing dissent.